111 T.C. No. 9


UNITED STATES TAX COURT


STEPHEN AND ANN SCHWALBACH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17502-97.                    Filed September 8, 1998.


Ps rented a building to a personal service
corporation for use in a business activity in which P
materially participated.  On Ps' 1994 Federal income
tax return, Ps offset the rental income with unrelated
passive losses.  Relying on secs. 1.469-2(f)(6) and
1.469-4(a), Income Tax Regs., R determined that Ps
could not offset the rental income with the passive
losses because the rental income was recharacterized as
nonpassive income.  Ps argue that sec. 1.469-2(f)(6),
Income Tax Regs., is invalid as applied to them because
the meaning of the word "activity" as used therein does
not include attributing a C corporation's activity to a
material participant in that activity without reference
to sec. 1.469-4(a), Income Tax Regs., which, Ps argue,
is invalid because R prescribed the rules of that
section without complying with the notice and comment
requirements of the Administrative Procedure Act (APA),
5 U.S.C. sec. 553(b) and (c) (1994).

<u>Held</u>:  R complied with the notice and comment requirements of the APA, <u>id.</u>, when R prescribed sec. 1.469-4(a), Income Tax Regs., and neither that section nor sec. 1.469-2(f)(6), Income Tax Regs., is invalid due to a lack of compliance with those requirements.

<u>Jay B. Kelly</u>, for petitioners.

<u>Blaine C. Holiday</u>, for respondent.


LARO, <u>Judge</u>:  Petitioners petitioned the Court to redetermine respondent's determination of an $11,869 deficiency in their 1994 Federal income tax and a $2,374 accuracy-related penalty under section 6662(a).  Following concessions by petitioners, the primary issue left to be decided is whether sections 1.469-2(f)(6) and 1.469-4(a), Income Tax Regs., are valid as applied to recharacterize the rental income of an individual who rents property to a personal service corporation for use in a business in which the individual materially participates.  We hold they are.  We also decide whether petitioners are liable for the accuracy-related penalty determined by respondent.  We hold they are not.  Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the subject year.  Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded to the nearest dollar.

## FINDINGS OF FACT

Some facts have been stipulated.  The stipulations of fact and the exhibits submitted therewith are incorporated herein by

this reference.  Petitioners resided in River Falls, Wisconsin, when they petitioned the Court.  They filed a joint 1994 Federal income tax return which was prepared by a certified public accountant (the C.P.A.).  Petitioners presented the C.P.A. with all relevant information to prepare the return, and he prepared the return based on his understanding of the tax law.  As of the time that the C.P.A. prepared the return, he had been practicing accountancy as a C.P.A. for approximately 20 years, and he had performed work for petitioners, including preparing their individual and business tax returns, for at least 16 years. Petitioners rely on the C.P.A. for business and tax advice.

Stephen Schwalbach (Dr. Schwalbach) practices dentistry in River Falls.  He is employed full time by Associated Dentists of River Falls, f.k.a. River Falls Dental Association (Associated Dentists), a personal service corporation that he owns equally with another dentist named Timothy Knotek.  Associated Dentists' business is based in a building (the River Falls building) owned by petitioners and let to Associated Dentists under a lease dated January 1, 1992.

Petitioners' 1994 Schedule E, Supplemental Income and Loss, reported net income of $50,556 on the rental of the River Falls building to Associated Dentists.  This schedule also reported that petitioners had realized a $1,670 loss renting a commercial building sited in Hudson, Wisconsin, and that they had realized $877 of net income renting a residential house sited in River

Falls.  Petitioners also reported on this schedule that they had realized a $10,148 passive loss on an investment in an S corporation named Golfview Heights, Inc., and that they had realized a $6,297 passive loss on an investment in a partnership named South Main Dental Partners.  Petitioners took into account all these items of income and loss, the effect of which was that they reported net passthrough and rental income of $33,318 ($50,556 + ($10,148) + ($6,297) + ($1,670) + $877).

Respondent determined that the three losses aggregating $18,115 (($10,148) + ($6,297) + ($1,670)) could offset only the $877 gain, resulting in an adjustment (increase) in income of $17,238.  According to the notice of deficiency:

> On Schedule E, Part I of your 1994 return, in regards to property B [i.e., the River Falls building], you reported a net profit of $50,556.  This property is related to your corporation for which you are a material participant.  You further offset passive losses of $16,445 from other companies shown on Schedule E, Part II against the non-passive income from related property B.  Internal Revenue Code section 469 changes the net income from the related rental property B from non-passive to passive income.[1]
>
> Further, on Schedule E, Part V of your 1994 return, your total net profit that you reported on your return was $33,318.  However, it has been determined that your total net profit on Schedule E is $50,556.  Your increase in net profit of $17,238 is based on the unallowable loss of $17,238 * * * as summarized below.

---

[1] Actually, the regulations under sec. 469 change the net income from the rental property from passive to nonpassive income.  Based on our reading of the entire notice of deficiency, we conclude that respondent's mischaracterization in the notice of deficiency is merely a typographical error.

Therefore, your taxable income for 1994 is increased by
$17,238.

Passive losses as corrected:
|  |  |
|---|---|
| Loss from Schedule E, Property A, Part I | $1,670 |
| Loss from Schedule E, Part II | 16,445 |
| Total corrected passive losses | 18,115 |
| Allowable passive income: | |
| Profit from Schedule E, Property C, Part I | 877 |
| Unallowable loss | 17,238 |

On June 21, 1993, Dr. Schwalbach paid $16,050 for a 5/6 interest in 6,000 shares of stock in a corporation named Impression Delivery Corp. (Impression); the total purchase price was $19,266. Approximately 3 weeks later, the 6,000 shares were sold for $7,374, and 6 days after the sale, Dr. Schwalbach purchased an interest in another 4,100 shares of Impression. Petitioners did not recognize a loss in 1993 on the sale of the stock because the C.P.A. considered the purchase-sale-purchase as a "wash sale" under section 1091. In 1994, petitioners, upon the advice of the C.P.A., reported a short-term capital loss of $16,050 on their 1994 Schedule D, Capital Gains and Losses, with respect to Impression's stock. The C.P.A. rendered his advice after ascertaining that Impression had ceased operations and was facing litigation over allegedly fraudulent practices.

Respondent disallowed the $16,050 loss reported by petitioners. According to the notice of deficiency, "It has not been established that the company known as Impression Delivery Corp. was insolvent or out of business in the year 1994. Further, it has not been established that you had an adjusted

basis in this company in order to claim this loss." Petitioners concede that they may not deduct this loss for 1994.

Respondent also determined that petitioners were liable for the accuracy-related penalty under section 6662(a), on account of negligence. Respondent determined that this penalty applied to the total underpayment shown in the notice of deficiency. The total underpayment was attributable to the disallowed capital loss, the increased income from the passive loss adjustment, and two de minimis computational adjustments.

OPINION

The instant dispute involves the recharacterization rule of section 1.469-2(f)(6), Income Tax Regs., and the attribution rule of section 1.469-4(a), Income Tax Regs. Respondent used these rules to recharacterize petitioners' rental income from the River Falls building from passive income to nonpassive income. Petitioners do not argue that respondent misapplied these rules or that the Commissioner lacked the authority to prescribe them. Petitioners' sole argument is that section 1.469-2(f)(6), Income Tax Regs., is invalid as applied to them because, petitioners allege, the Commissioner prescribed section 1.469-4(a), Income Tax Regs., which is necessary to apply the recharacterization rule to a material participant of a C corporation's activity, without complying with the notice and comment requirements of the Administrative Procedure Act (APA),

5 U.S.C. sec. 553(b) and (c) (1994).  The notice and comment

requirements of the APA provide:

> (b) General notice of proposed rule making shall be published in the Federal Register * * *.  The notice shall include--

>> (1) a statement of the time, place, and nature of public rule making proceedings;

>> (2) reference to the legal authority under which the rule is proposed; and

>> (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.

> Except when notice or hearing is required by statute, this subsection does not apply--

>> (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or

>> (B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

> (c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation.  After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.  * * *  [5 U.S.C. sec. 553(b) and (c).]

We disagree with petitioners' assertion that sections

1.469-2(f)(6) and 1.469-4(a), Income Tax Regs., are invalid when

applied to a material participant of an activity conducted by a

C corporation.  Section 1.469-2(f)(6), Income Tax Regs., was

prescribed by the Commissioner under the broad regulatory authority that Congress delegated to him through sections 469(l)(1) and 7805,[2] T.D. 8417, 1992-1 C.B. 173-174, and is effective for taxable years ending after May 10, 1992, sec. 1.469-11(a)(1), Income Tax Regs.  That section provides in relevant part:

> § 1.469-2.  Passive activity loss.-- * * *
>
> > *    *    *    *    *    *    *
>
> (f)(6) Property rented to a nonpassive activity. An amount of the taxpayer's gross rental activity income for the taxable year from an item of property equal to the net rental activity income for the year

---

[2] In relevant part, sec. 469(l) provides:

> (l) Regulations.--The Secretary [or his delegate, see sec. 7701(a)(11)(B)] shall prescribe such regulations as may be necessary or appropriate to carry out provisions of * * * section [469], including regulations--
>
> > (1) which specify what constitutes an activity, material participation, or active participation for purposes of this section,
> >
> > (2) which provide that certain items of gross income will not be taken into account in determining income or loss from any activity * * *,
> >
> > (3) requiring net income or gain from a limited partnership or other passive activity to be treated as not from a passive activity * * *

Sec. 7805(a) generally provides that the "Secretary * * * [or his delegate, see sec. 7701(a)(11)(B)] shall prescribe all needful rules and regulations for the enforcement of [the Internal Revenue Code]".

from that item of property is treated as not from a passive activity if the property--

(i) Is rented for use in a trade or business activity * * * in which the taxpayer materially participates * * * for the taxable year; * * *

The fact that section 1.469-2(f)(6), Income Tax Regs, was prescribed by the Commissioner pursuant in part to the specific grant of authority stated in section 469(l)(1), and that section 1.469-2(f)(6), Income Tax Regs., contains substantive rules that are legislative in character, means that the promulgation of section 1.469-2(f)(6), Income Tax Regs., is not excepted from the notice and comment requirements of the APA, supra.  See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-844 (1984); Bankers Life & Cas. Co. v. United States, 142 F.3d 973, 978-979 (7th Cir. 1998); Water Quality Association Employees' Benefit Corp. v. United States, 795 F.2d 1303, 1305 (7th Cir. 1986); Wing v. Commissioner, 81 T.C. 17, 28 (1983); see also Schaefer v. Commissioner, 105 T.C. 227, 229-231 (1995) (sec. 1.469-2T(c)(7)(iv), Temporary Income Tax Regs., 53 Fed. Reg. 5686, 5716 (Feb. 25, 1988), is a legislative regulation because it was issued under the specific grant of authority contained in sec. 469(l)(2)).

Section 1.469-2(f)(6), Income Tax Regs., was issued on May 15, 1992, and it reads nearly verbatim as it appeared when it was proposed on February 25, 1988.  See Notice of Proposed Rulemaking, 53 Fed. Reg. 5733 (Feb. 25, 1988) (text of section

1.469-2T(f)(6), Temporary Income Tax Regs., 53 Fed. Reg. 5686, 5723 (Feb. 25, 1988), served as the text of the proposed regulations).  The notice of proposed rulemaking complied with the notice and comment requirements of the APA, supra; inter alia, it set forth by cross-reference the substance of the proposed regulations, including the subjects, issues, and rules involved, and it invited written comments.  53 Fed. Reg. 5733. The notice of proposed rulemaking also invited requests for a public hearing and stated that a public hearing would be held, upon the request of any commentator, at a time and place to be published in the Federal Register.  Id.

Section 1.469-4(a), Income Tax Regs., was prescribed by the Commissioner under the broad regulatory authority that Congress delegated to him through sections 469(l) and 7805, T.D. 8565, 1994-2 C.B. 81, 83, and is generally effective for taxable years ending after May 10, 1992, sec. 1.469-11(a)(1), Income Tax Regs. Section 1.469-4(a), Income Tax Regs., provides:

> § 1.469-4.  Definition of activity.--(a)  Scope and
> purpose.  This section sets forth the rules for
> grouping a taxpayer's trade or business activities and
> rental activities for purposes of applying the passive
> activity loss and credit limitation rules of section
> 469.  A taxpayer's activities include those conducted
> through C corporations that are subject to section 469
> * * *.  [Sec. 1.469-1T(b)(4), Temporary Income Tax
> Regs., 53 Fed. Reg. 5686, 5701 (Feb. 25, 1988),
> provides that a C corporation is subject to section 469
> if it is a personal service corporation.]

The second sentence of section 1.469-4(a), Income Tax Regs., which contains the attribution rule in dispute, is a change from

two previous sets of proposed regulations which the Commissioner issued to define the word "activity".  With respect to both sets of proposed regulations, the Commissioner issued a notice of proposed rulemaking that set forth (either in the document or by cross-reference to another document) the substance of the proposed regulations, including the subjects, issues, and rules involved, and invited written comments and requests for a public hearing.[3]  54 Fed. Reg. 20606 (May 12, 1989) (first set of proposed regulations); 57 Fed. Reg. 20802 (May 15, 1992) (second set of proposed regulations).  The notice of proposed rulemaking on the first set of proposed regulations stated that a public hearing would be held, upon the request of any commentator, at a time and place to be published in the Federal Register.  54 Fed. Reg. 20606-20607.  The notice of proposed rulemaking on the second set of proposed regulations referenced a separate document that stated that the Commissioner was holding a hearing on the proposed regulations on July 24, 1992, at 1:30 p.m., in room 7400, Internal Revenue Service Building, 1111 Constitution Avenue, N.W., Washington, D.C.  57 Fed. Reg. 20805.  On June 15, 1992, the Commissioner announced that the hearing had been

---

[3] When the Commissioner issued the notice of proposed rulemaking on the first set of proposed regulations, he also issued temporary regulations defining the word "activity".  See sec. 1.469-4T, Temporary Income Tax Regs., 54 Fed. Reg. 20527, 20542 (May 12, 1989).  The text of the temporary regulations served as the text of the proposed regulations.  54 Fed. Reg. 20527, 20606.

changed to September 3, 1992, at 10 a.m., in room 2615, Internal Revenue Service Building, 1111 Constitution Avenue, N.W., Washington, D.C. 57 Fed. Reg. 23356 (June 3, 1992). As is true in the case of section 1.469-2(f)(6), Income Tax Regs., the fact that section 1.469-4(a), Income Tax Regs, was prescribed by the Commissioner pursuant in part to the specific grant of authority stated in section 469(l), and that section 1.469-4(a), Income Tax Regs., contains substantive rules that are legislative in character, means that the promulgation of section 1.469-4(a), Income Tax Regs., is not excepted from the notice and comment requirements of the APA, 5 U.S.C. sec. 553(b) and (c) (1994). See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. at 843-844; Bankers Life & Cas. Co. v. United States, 142 F.3d at 978-979; Water Quality Association Employees' Benefit Corp. v. United States, 795 F.2d at 1305; Wing v. Commissioner, 81 T.C. at 28; see also Schaefer v. Commissioner, 105 T.C. at 229-231 (sec. 1.469-2T(c)(7)(iv), Temporary Income Tax Regs., 53 Fed. Reg. 5716, is a legislative regulation because it was issued under the specific grant of authority contained in sec. 469(l)(2)).

Section 469, the section of the Code to which sections 1.469-2(f)(6) and 1.469-4(a), Income Tax Regs., relate, was enacted by Congress as part of the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, sec. 501(a), 100 Stat. 2085, 2233, in response to congressional concern that certain categories of taxpayers were

engaging in activities which generated losses in order to use those losses to escape taxation on income from unrelated activities. See Schaefer v. Commissioner, 105 T.C. at 230. Section 469, which is generally effective for taxable years beginning after December 31, 1986, TRA sec. 501(c)(1), 100 Stat. 2241, was designed by Congress to thwart a taxpayer's attempt to reduce taxable income by losses which were attributable to activities in which the taxpayer did not materially participate; i.e., passive activities. Section 469 generally prevents a taxpayer from deducting passive activity losses from income unrelated to a passive activity, requiring that passive losses be used only to offset passive income. A passive activity loss includes all losses from passive activities, and a rental activity is generally defined by section 469(c)(2) to be a "passive activity". Passive income does not include certain types of income such as portfolio income (i.e., interest, dividends, annuities, or royalties), gain on the disposition of property, and earned income. Sec. 469(e).

The linchpin of section 469 is the determination of each activity in which a taxpayer participates, and Congress delegated to the Commissioner the responsibility of prescribing the meaning of the word "activity". See sec. 469(l)(1). The first set of proposed regulations set forth a voluminous and complex mechanical test for determining a taxpayer's activities. See 54 Fed. Reg. 20527, 20606 (May 12, 1989); see also sec. 1.469-4T,

Temporary Income Tax Regs., 54 Fed. Reg. 20543 (serves as text of

proposed regulations).  As applicable herein, section

1.469-4T(b)(2)(ii)(B), Temporary Income Tax Regs., 54 Fed. Reg.

20543, provided:

> (B) Operations conducted through nonpassthrough entities.  For purposes of applying section 469 and the regulations thereunder, a taxpayer's activities do not include operations that the taxpayer conducts through one or more entities (other than passthrough entities). The following example illustrates the operation of this paragraph (b)(2)(ii)(B):

> Example. (i) A, an individual, owns stock of X, a closely held corporation * * * that is directly engaged in the conduct of a real estate development business.  A participates in X's real estate development business, but does not own any interest in the business other than through ownership of the stock of X.

> (ii) X is subject to section 469 * * * and does not hold the real estate development business through another entity. Accordingly, for purposes of section 469 and the regulations thereunder, the operations of X's real estate development business are treated as part of X's activities.

> (iii) A is also subject to section 469 * * *, but A's only interest in the real estate development business is held through X.  X is a C corporation and therefore is not a passthrough entity.  Thus, for purposes of section 469 and the regulations thereunder, A's activities do not include the operations of X's real estate development business. Accordingly, A's participation in X's business is not participation in an activity of A, and is not taken into account in determining whether A materially participates * * * or significantly participates * * * in any activity. * * *

Following comments and a hearing on the first set of proposed regulations, see Announcement 89-110, 1989-36 I.R.B. 27 (Sept. 5, 1989), the Commissioner withdrew the proposed regulations and allowed the related temporary regulations to expire under the 3-year sunset provision of section 7805(e)(2). See 57 Fed. Reg. 20803. The Commissioner's actions were driven, in part, by public criticism that the proposed regulations were "overly long and complex, burdensome for small taxpayers, and mechanically inflexible." Id. Contemporaneously with the withdrawal of the proposed regulations, the Commissioner, on May 15, 1992, issued a second set of proposed regulations defining the word "activity". 57 Fed. Reg. 20802. In contrast with the first set, the second set contained a simple "facts-and-circumstances approach to identify a taxpayer's activities." Id. In further contrast with the first set of proposed regulations, the second set did not address the treatment of activities which were conducted through a C corporation in which the taxpayer owned an interest.

The Commissioner finalized the proposed regulations defining the word "activity" in late 1994 to read in relevant part as set forth above in section 1.469-4(a), Income Tax Regs. T.D. 8565, 1994-2 C.B. 81, 83. Before doing so, the Commissioner considered the comments that were proffered on the subject. 59 Fed. Reg. 50485, 50486 (Oct. 4, 1994). As was true with respect to the first set of proposed regulations, but which was untrue with

respect to the second set, the final regulations addressed the treatment of activities which were conducted through a C corporation. In a complete reversal from the position stated in the first set of proposed regulations, the final regulations provided an attribution rule under which a taxpayer's activities include activities conducted through a C corporation subject to section 469. Sec. 1.469-4(a), Income Tax Regs. In line with this attribution rule, the preamble to the final regulations stated:

> A commentator requested clarification on whether activities conducted through a C corporation may be grouped with activities not conducted through the C corporation. The final regulations clarify that in determining whether a taxpayer materially or significantly participates in an activity, a taxpayer may group that activity with activities conducted through C corporations that are subject to section 469 (that is, personal service and closely held C corporations). [T.D. 8565, 1994-2 C.B. at 82.]

As we understand the thrust of petitioners' argument, an application of section 1.469-2(f)(6), Income Tax Regs., to the material participant of a C corporation activity is vague because, absent regulations, the meaning of the word "activity" does not attribute to an individual the activities of a C corporation. According to petitioners, the breadth of the word "activity" must be known in order to apply the rules of section 469 and the regulations thereunder, and the Commissioner did not settle on a meaning for that word until he issued section 1.469-4, Income Tax Regs., in 1994. Even then, petitioners

claim, the attribution rule set forth in section 1.469-4(a), Income Tax Regs., is a substantial change from the rules set forth in the proposed regulations, which, petitioners allege, means that the Commissioner should have given notice and allowed comment on the attribution rule pursuant to the APA, 5 U.S.C. sec. 553(b) and (c) (1994). Because the Commissioner did not, petitioners conclude, the attribution rule of section 1.469-4(a), Income Tax Regs., is invalid, which, in turn, invalidates the recharacterization rule of section 1.469-2(f)(6), Income Tax Regs., to the extent that it attributes the activities of a C corporation to an individual who materially participates in that activity.

We disagree with petitioners' assertion that sections 1.469-2(f)(6) and 1.469-4(a), Income Tax Regs., are invalid as applied in the instant case. With respect to section 1.469-2(f)(6), Income Tax Regs., and section 469 in general, the uncertainty as to the breadth of a provision does not mean that it is inoperative until regulations are issued clarifying the breadth of it. See SEC v. Chenery Corp., 332 U.S. 194, 201-203 (1947); Jacks v. Crabtree, 114 F.3d 983, 985-986 (9th Cir. 1997); Trans City Life Ins. Co. v. Commissioner, 106 T.C. 274, 299-300 (1996). In the absence of regulations, a provision may be interpreted in light of all pertinent evidence, textual and contextual, of its meaning. See Commissioner v. Soliman, 506 U.S. 168, 174 (1993); Crane v. Commissioner, 331 U.S. 1, 6-7

(1947); <u>Old Colony R.R. Co. v. Commissioner</u>, 284 U.S. 552, 560 (1932).  Although Congress instructed the Commissioner to prescribe regulations under section 469 which would specify what constitutes an activity, see sec. 469(l)(1), this does not mean that section 469 or the regulations thereunder require the Commissioner to define the word "activity" in order for the statutory and regulatory provisions to be effective.  We find nothing in the statutory text, or in its legislative history, that conditions the effectiveness of section 469 on the issuance of regulations.  See <u>Trans City Life Ins. Co. v. Commissioner</u>, 106 T.C. at 299-300; <u>Estate of Neumann v. Commissioner</u>, 106 T.C. 216 (1996); <u>H Enters. Intl., Inc. v. Commissioner</u>, 105 T.C. 71, 81-85 (1995).

As to petitioners' assertion concerning the new language that appeared in section 1.469-4(a), Income Tax Regs., the change in language from the proposed regulations was substantial; up until the final regulations, the Commissioner had not publicly taken the position that an individual's activities could include activities conducted through a C corporation.  The mere fact, however, that the Commissioner adopted a new position in section 1.469-4(a), Income Tax Regs., does not necessarily mean that the Commissioner was required to give another notice and allow another comment period on that position.  The Commissioner is not required by the APA, <u>supra</u>, to include in proposed regulations every precise rule that ultimately appears in the final

regulations.  American Paper Inst. v. EPA, 660 F.2d 954, 959 n.13 (4th Cir. 1981); California Citizens Band Association v. United States, 375 F.2d 43, 48 (9th Cir. 1967); Logansport Broadcasting Corp. v. United States, 210 F.2d 24, 28 (D.C. Cir. 1954).  The consensus among the Courts of Appeals is that a final rule must differ substantially from a proposed rule in order to require another round of notice and comment, but even when it does differ substantially, the final rule will not require another notice and comment period if it is "in character with the original proposal" and a "logical outgrowth" of the notice and comments on the proposed rule.  National Mining Association v. Mine Safety & Health Admin., 116 F.3d 520, 530-531 (D.C. Cir. 1997); Alabama Power Co. v. OSHA, 89 F.3d 740, 745 (11th Cir. 1996); Rybachek v. EPA, 904 F.2d 1276, 1287-1288 (9th Cir. 1990); American Med. Association v. United States, 887 F.2d 760, 767 (7th Cir. 1989); Chemical Manufacturers Association v. EPA, 870 F.2d 177, 203 (5th Cir. 1989); United Steelworkers of Am., AFL-CIO-CLC v. Pendergrass, 855 F.2d 108, 113 (3d Cir. 1988); Natural Resources Defense Council, Inc. v. EPA, 824 F.2d 1258, 1282-1285 (1st Cir. 1987); National Black Media Coalition v. FCC, 791 F.2d 1016, 1022 (2d Cir. 1986); American Paper Inst. v. EPA, 660 F.2d at 959 n.13.  Whether a final rule meets such a test rests on whether "'the purposes of notice and comment have been adequately served.'"  Northwest Tissue Ctr. v. Shalala, 1 F.3d 522, 528 n.7 (7th Cir. 1993) (quoting Fertilizer Inst. v. EPA, 935 F.2d 1303,

1311 (D.C. Cir. 1991)); American Water Works Association v. EPA, 40 F.3d 1266, 1274 (D.C. Cir. 1994) (quoting Fertilizer Inst. v. EPA, 935 F.2d at 1311). The critical inquiry is whether commentators have had a fair opportunity to present their views on the final plan in a way that the Commissioner might find convincing. American Water Works Association v. EPA, 40 F.3d at 1274; Fertilizer Inst. v. EPA, supra; United Steelworkers of Am., AFL-CIO-CLC v. Marshall, 647 F.2d 1189, 1225 (D.C. Cir. 1980); BASF Wyandotte Corp. v. Costle, 598 F.2d 637, 642 (1st Cir. 1979); South Terminal Corp. v. EPA, 504 F.2d 646, 658 (1st Cir. 1974); see also American Med. Association v. United States, 887 F.2d at 768; Natural Resources Defense Council v. EPA, 824 F.2d at 1283; American Transfer & Storage Co. v. ICC, 719 F.2d 1283, 1303 (5th Cir. 1983); Wing v. Commissioner, 81 T.C. at 33-35. Stated differently, the Commissioner's final regulations are not subject to another notice and comment period where the proposed regulations fairly apprise interested persons of subjects and issues that may be addressed in the final regulations. Wing v. Commissioner, 81 T.C. at 35; see also Small Refiner Lead Phase-Down Task Force v. EPA, 705 F.2d 506, 547 (D.C. Cir. 1983); American Iron & Steel Inst. v. EPA, 568 F.2d 284, 293 (3d Cir. 1977). The purposes of notice and comment are adequately served when proposed rules generate diverse public comment, are fair to affected parties, and give affected parties an opportunity to develop evidence in the record. Association of Am. R.R. v.

<u>Department of Transp.</u>, 38 F.3d 582, 589 (D.C. Cir. 1994); <u>Small Refiner Lead Phase-Down Task Force v. EPA</u>, 705 F.2d at 547. The purpose of notice and comment is not adequately served, on the other hand, where interested persons could not reasonably anticipate the final rules from the proposed rules. <u>Natural Resources Defense Council, Inc. v. EPA</u>, 863 F.2d 1420, 1429 (9th Cir. 1988); see also <u>American Water Works Association v. EPA</u>, 40 F.3d at 1275; <u>Anne Arundel County v. EPA</u>, 963 F.2d 412, 418 (D.C. Cir. 1992). Where the final rules deviate too sharply from the proposed rules, notice is inadequate. <u>AFL-CIO v. Donovan</u>, 757 F.2d 330, 338 (D.C. Cir. 1985); <u>Small Refiner Lead Phase-Down Task Force v. EPA</u>, 705 F.2d at 547.

Our review of the evolution of section 1.469-4(a), Income Tax Regs., leads us to conclude that the amendments contained therein are in character with the original scheme for section 469 and the regulations thereunder and are a logical outgrowth of the comments which were made on the two sets of proposed regulations. The Commissioner offered affected persons the opportunity to develop an evidentiary record on the promulgation of section 1.469-4(a), Income Tax Regs., by inviting them to comment publicly on the substance of each set of the proposed regulations. The first set of proposed regulations dealt specifically with the attribution rule stating that a corporation's activities will not be attributed to an individual who conducts the activity through the corporation. Although the

second set of proposed regulations was silent on this rule, including whether the Commissioner was considering abandoning it, we read nothing in the second set of proposed regulations that would lead us to believe that the Commissioner was proposing to retain the rule.[4]  Given the additional fact that the Commissioner not only invited comments on both sets of the proposed regulations, but held hearings as well, we do not believe that commentators were deprived of their right to comment on the matter included in section 1.469-4, Income Tax Regs.  The first and second set of proposed regulations fairly apprised interested parties of the wide range of issues that the Commissioner had to address in the final rules defining the word "activity", and the fact that the Commissioner invited comments on both sets of proposed regulations allowed commentators to express their views on the final plan in a way that the Commissioner could find convincing.  The fact that persons who were interested in the matter of section 1.469-4, Income Tax

---

[4] Petitioners assert that agents of the Commissioner stated publicly that the lack of an attribution rule, as it applied to C corporations in the first set of proposed regulations, would be retained in the final regulations.  We give these assertions no weight.  Even assuming arguendo that the statements were made, these oral statements are not binding on the Commissioner. Martin's Auto Trimming, Inc. v. Riddell, 283 F.2d 503, 506 (9th Cir. 1960); Darling v. Commissioner, 49 F.2d 111, 113 (4th Cir. 1931) (Government is not bound by agents acting beyond the scope of their authority), affg. 19 B.T.A. 337 (1930); Fortugno v. Commissioner, 41 T.C. 316, 323-324 (1963), affd. 353 F.2d 429 (3d Cir. 1965); see also Wilkinson v. United States, 157 Ct. Cl. 847, 304 F.2d 469, 474, 475 (1962).

Regs., could have seen and anticipated an attribution rule therein may also be understood from the legislative history of section 469. The legislative history speaks directly to an attribution rule, stating explicitly:

> The conferees believe that clarification is desirable regarding the regulatory authority provided to the Treasury with regard to the definition of income that is treated as portfolio income or as otherwise not arising from a passive activity. The conferees intend that this authority be exercised to protect the underlying purpose of the passive loss provision, i.e., preventing the sheltering of positive income sources through the use of tax losses derived from passive business activities.
>
> Examples where the exercise of such authority may (if the * * * [Commissioner] so determines) be appropriate include the following: * * * related party leases or sub-leases, with respect to property used in a business activity, that have the effect of reducing active business income and creating passive income. * * * [H. Conf. Rept. 99-841 (Vol. II), at II-197 (1986), 1986-3 C.B. (Vol. 4) 147.]

In sum, we believe that the purposes of notice and comment were adequately served in the Commissioner's promulgation of section 1.469-4, Income Tax Regs. The Commissioner adopted the attribution rule pursuant to an explicit congressional grant of authority, and commentators had a fair opportunity to present their views on the contents of that rule. The rule derives directly from the legislative history to section 469, and it is both in character with the original proposal for section 469, and the regulations thereunder, and a logical outgrowth of the two rounds of notice and comment on the proposed regulations. Whereas petitioners would force the Commissioner to comply with

the APA, <u>supra</u>, upon the issuance of any taxpayer-unfriendly rule, the APA, <u>id.</u>, does not require such a Draconian result.

We sustain respondent's determination on this issue. In so doing, we decline petitioners' invitation to allow them to apply the rules of section 1.469-4T(b)(ii)(B), Temporary Income Tax Regs., 54 Fed. Reg. 20543, in lieu of the rules stated in section 1.469-4(a), Income Tax Regs. Simply put, the effective date and transition rules related to the regulatory rules under section 469 do not allow them to use it. See sec. 1.469-11, Income Tax Regs.

As to the accuracy-related penalty, section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the portion of an underpayment that is attributable to, among other things, negligence. Petitioners will avoid this charge if the record shows that they were not negligent; i.e., they made a reasonable attempt to comply with the provisions of the Internal Revenue Code, and they were not careless, reckless, or in intentional disregard of rules or regulations. Sec. 6662(c); <u>Accardo v. Commissioner</u>, 942 F.2d 444, 452 (7th Cir. 1991), affg. 94 T.C. 96 (1990); <u>Drum v. Commissioner</u>, T.C. Memo. 1994-433, affd. without published opinion 61 F.3d 910 (9th Cir. 1995); see also <u>Allen v. Commissioner</u>, 925 F.2d 348, 353 (9th Cir. 1991) (negligence defined as a lack of due care or a failure to do what a reasonable and prudent person would do under similar circumstances), affg. 92 T.C. 1 (1989). Good faith reliance on

the advice of counsel or a qualified accountant can, in certain circumstances, be a defense to the accuracy-related penalty for negligence.  See, e.g., <u>Ewing v. Commissioner</u>, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); <u>Jackson v. Commissioner</u>, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); <u>Pessin v. Commissioner</u>, 59 T.C. 473, 489 (1972); <u>Conlorez Corp. v. Commissioner</u>, 51 T.C. 467, 475 (1968).  In those cases, the taxpayer must establish:  (1) The adviser had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. See <u>Ellwest Stereo Theatres v. Commissioner</u>, T.C. Memo. 1995-610.

The record shows that petitioners acted reasonably with respect to the items reported on their 1994 tax return.  They consulted their long-time business and tax adviser, an experienced and knowledgeable accountant, and they supplied him with the information necessary to prepare their return.  The C.P.A. advised petitioners on what he believed was the correct reporting position of the items reported in the return, and petitioners relied on and followed his advice.  Under the facts herein, we believe that petitioners' reliance on the C.P.A. to prepare a correct return was reasonable, and we hold for them on this issue.

In reaching our holdings herein, we have considered all arguments by the parties for contrary holdings, and, to the extent not discussed above, find those arguments to be irrelevant or without merit.  To reflect the foregoing,

Decision will be entered for respondent as to the deficiency, and for petitioners as to the accuracy-related penalty.