T.C. Memo. 2008-123

UNITED STATES TAX COURT

JACK M. AND AIMEE J. MEZRAH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19742-98.                    Filed May 1, 2008.

<u>Mitchell I. Horowitz</u>, for petitioner.

<u>Stephen R. Takeuchi</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Judge</u>:  Respondent determined a deficiency in tax for
petitioners' 1994 taxable year of $286,300 and a section 6662(a)
penalty of $10,747.  After concessions, the issues we must decide
are:  (1) Whether petitioners properly elected to exclude,
pursuant to section 108(c)(3)(C), $519,413 in cancellation of

indebtedness income as a distributive share of the partnership Capital Concepts Properties 84-A; (2) if not, whether petitioners should be permitted, pursuant to section 301.9100-3, Proced. & Admin. Regs., to make a late section 108(c)(3)(C) election for their taxable year 1994; and (3) whether petitioners are liable for a section 6662(a) penalty for taxable year 1994. Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts and certain exhibits have been stipulated. The parties' stipulations of fact are incorporated in this opinion by reference and are found as facts in the instant case. At the time of filing the petition, petitioners resided in Florida.

Petitioner husband, Dr. Jack M. Mezrah (Dr. Mezrah), is a physician specializing in obstetrics and gynecology. During taxable year 1994, Dr. Mezrah practiced gynecology. Dr. Mezrah's average workday included surgeries, office work, and hospital rounds. Dr. Mezrah's education did not include any course work in either accounting or tax.

During taxable year 1994 petitioner wife, Mrs. Aimee J. Mezrah (Mrs. Mezrah), was employed as a travel agent. Mrs. Mezrah holds a degree in education and taught school for 5 years.

Mrs. Mezrah's education does not include any course work in either accounting or tax.

Mrs. Mezrah was not involved in handling the family finances. Rather, Mrs. Mezrah left the responsibility of family investments to Dr. Mezrah. Dr. Mezrah relied on the investment and tax advice of his accountant, Elliot Buchman (Mr. Buchman). Dr. Mezrah referred his financial paperwork to Mr. Buchman.

During 1984 petitioners purchased for $137,500 a 0.995025-percent interest in profits, losses and capital of Capital Concepts Properties 84-A (CapCon 84-A), a Texas limited partnership. Petitioners did not make any additional investments in CapCon 84-A. CapCon 84-A was a limited partner in Anaheim Hotel Partnership (AHP), a Texas general partnership. CapCon 84-A held a 100-percent profits and loss interest and a 10-percent capital interest in AHP. Sun Cal Investments No. 2, Ltd. (SCI2), a Texas limited partnership, of which May Cal Properties, Inc. (May Cal), a California corporation was the general partner, owned the other 90-percent capital interest in AHP.

During 1984, AHP purchased the Anaheim Hilton & Towers Hotel and the adjoining parking garage structure (the hotel). AHP used the hotel in the trade or business of offering hotel-related services. The hotel was subject to several mortgages and to long-term ground leases on the underlying real estate which was held by third parties. During 1989, AHP sold 51.07 percent of

its interest in the hotel, leaving it with a 48.93-percent interest in the hotel.

In anticipation of a debt restructuring on the debt secured by the hotel in 1994, AHP converted from a Texas general partnership to a California limited partnership. Because of the hotel debt restructuring, AHP reported on its 1994 Form 1065, U.S. Partnership Return of Income, as a separately stated item, cancellation of indebtedness income of $52,200,983. Additionally, 100 percent of that $52,200,983 was reported on the Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., issued to CapCon 84-A. On its 1994 Form 1065, CapCon 84-A included that cancellation of indebtedness income as a separately stated item. CapCon 84-A allocated that income among its partners, including petitioners. Cancellation of indebtedness income of $519,413 flowed through to petitioners as partners in a double-tiered partnership.

On September 16, 1994, Richard A. Callaghan, general partner of CapCon 84-A, corresponded with all CapCon 84-A partners to inform them of the immediate need for additional capital investments of $1.5 million. In addition to other tax implications, the correspondence indicated that petitioners would be forced to recapture their entire negative capital account of $1,419,000 in 1994.

On their joint 1994 income tax return, petitioners excluded $519,413 from their income and failed to file with the return the required Form 982, Reduction of Tax Attributes Due to Discharge of Indebtedness. Instead, petitioners filed with their joint 1994 return Form 8082, Notice of Inconsistent Treatment or Amended Return (Administrative Adjustment Requirement (AAR)), in which they excluded the $519,413 from income and reported "0" income. On Form 8082, petitioners stated:

> The K-1 of the partnership above reflected forgiveness of debt. According to the records of the taxpayer, this debt was the debt of the seller, and should have reduced the carrying value of the asset, under section 108(e)(5) and not have been reflected as income. In addition, it is believed that this debt was never included as part of the qualified debt, nad (sic) therefore would have no effect on this taxpayer's return.

Because petitioners were unsure of their basis in CapCon 84-A, they did not reduce their basis in any property.

Petitioners timely filed their 1994 joint income tax return. During early 1997 Internal Revenue Service (IRS) Agent Ellen Loeb (Agent Loeb) commenced an audit of petitioners' 1994 income tax return. Mr. Buchman sent Agent Loeb a power of attorney form and represented petitioners during an audit for petitioners' taxable year 1994. Agent Loeb conducted research and concluded that the section 108(a)(1)(D) exclusion from gross income for qualified property business indebtedness applied under such circumstances. However, Agent Loeb also concluded, in error, that the

partnership, CapCon 84-A, as opposed to the partner, i.e., petitioners, should have made the section 108(c)(3)(C) election. On December 9, 1997, Agent Loeb prepared and issued her Revenue Agent's Report (RAR) in which she stated that "The partners of CapCon 84-A do not make the election to exclude the income."

On September 16, 1998, respondent issued to petitioners a notice of deficiency determining a deficiency for petitioners' taxable year 1994 of $286,030 and a section 6662(a) penalty of $10,747.

The parties have stipulated that, on the basis of information supplied to respondent between July and October, 2001, if petitioners had reduced their CapCon 84-A partnership basis to the extent of any flowthrough interest in qualified real property, or their basis in other qualified real property interests, petitioners would have been entitled to make a timely section 108(c)(3)(C) election and a section 1017 reduction in basis of the partner's proportionate interest in depreciable property held by that partnership. Sec. 1017(b)(3)(C). Additionally, the parties have stipulated that if petitioners had timely made the election, they could have excluded $519,413 in cancellation of indebtedness income from their income for taxable year 1994.

During 2002, petitioners requested a private letter ruling seeking relief under section 301.9100-3, Proced. & Admin. Regs.

(section 9100 relief).  On July 25, 2005, respondent issued Priv. Ltr. Rul. 137467-03 in which respondent denied petitioners' section 9100 relief request on the grounds that the IRS was prejudiced because petitioners took depreciation deductions beyond their exhaustible partnership basis for taxable years closed by expiration of the limitations periods for assessments.

OPINION

Petitioners do not dispute that they did not timely elect to exclude the relief of indebtedness income in issue pursuant to section 108(c)(3)(C).[1]  Petitioners did not properly file Form

---

[1]SEC. 108 INCOME FROM DISCHARGE OF INDEBTEDNESS.

(a) Exclusion from Gross Income.--

(1) In general.–Gross income does not include any amount which (but for this subsection) would be includable in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if--

(A) the discharge occurs in a title 11 case, or

(B) the discharge occurs when the taxpayer is insolvent,

(C) the indebtedness discharged is qualified farm indebtedness, or

(D) in the case of a taxpayer other than a C corporation, the indebtedness discharged is qualified real property business indebtedness.

\*          \*          \*          \*          \*          \*

(continued...)

982 with their 1994 return.  Instead, petitioners incorrectly

filed Form 8082 disclosing inconsistent treatment of the

cancellation of indebtedness income.  Petitioners do not now

---

[1](...continued)
        (c) Treatment of Discharge of Qualified Real
Property Business Indebtedness. --

                (1) Basis reduction.--

                        (A) In general.--The amount excluded from
                gross income under subparagraph (D) of subsection
                (a)(1) shall be applied to reduce the basis of the
                depreciable real property of the taxpayer.

                        (B) Cross reference.-For provisions making
                the reduction described in subparagraph (A), see
                section 1017.

        *               *               *               *               *               *

                (3) Qualified real property business
        indebtedness.--The term "qualified real property
        business indebtedness" means indebtedness which--

                        (A) was incurred or assumed by the taxpayer
                in connection with real property used in a trade
                or business and is secured by such real property,

                        (B) was incurred or assumed before January 1,
                1993, or if incurred or assumed on or after such
                date, is qualified acquisition indebtedness, and

                        (C) with respect to which such taxpayer makes
                an election to have this paragraph apply.

                * * *  Indebtedness under subparagraph (B)
                shall include indebtedness resulting from the
                refinancing of indebtedness under subparagraph (B) (or
                this sentence), but only to the extent it does not
                exceed the amount of the indebtedness being refinanced.

argue that they properly followed the procedure under section 1.108(c)-1T, Temporary Income Tax Regs., 58 Fed. Reg. 68300 (Dec. 27, 1993),[2] for excluding income.[3]  Rather, petitioners contend that they should be granted section 9100 relief in order to file a late section 108(c)(3)(C) election for their taxable year 1994.  They note that they are willing to refund any benefit they received during the closed years from depreciation deductions taken beyond their partnership basis as it should have been reduced under section 1017.

---

[2]In order to exclude cancellation of indebtedness income and make a sec. 108(c)(3)(C) election and an accompanying sec. 1017 basis reduction, sec. 1.108(c)-1T, Temporary Income Tax Regs., 58 Fed. Reg. 68300 (Dec. 27, 1993), requires taxpayers to file Form 982, Reduction of Tax Attributes Due to Discharge of Indebtedness, with their tax return or amended tax return for the relevant taxable year.

[3]At the time that petitioners filed their return for 1994, sec. 1.108(c)-1T, Temporary Income Tax Regs., supra, was in effect.  If the taxpayer establishes reasonable cause for failure to make the election on the original return, sec. 1.108(c)-1T, Temporary Income Tax Regs., supra, promulgated in 1996, explicitly permits an election to be made on an amended return by means of a claim for credit or refund.  The final regulation, sec. 1.108(c)-1, Income Tax Regs., was made retroactively effective as of Dec. 27, 1993, and does not include a reasonable cause exception for amended returns by means of a claim for credit or refund.  Instead, the taxpayer must request under sec. 301.9100-3T, Temporary Proced. & Admin. Regs., 58 Fed. Reg. 68300 (Dec. 27, 1993), the Commissioner's consent to file a late election on a timely-filed return for the year in which cancellation of indebtedness income is realized.  T.D. 8688, 1997-1 C.B. 12.  In the instant case, the final regulation controls.  However, petitioners concede that they failed to comply with the temporary regulation, the more lenient of the two regulations.  We consider below whether petitioners are entitled to relief under sec. 301.9100-3(a), Proced. & Admin. Regs.

Section 108(a)(1)(D) and (c) generally allows a taxpayer to avoid reporting income generated from discharge of qualified real property business indebtedness and, instead, pursuant to section 1017, reduce their basis of the partner's proportionate interest in depreciable property held by the partnership.  Sec. 1017(b)(3)(C).[4]  As noted above, the parties have stipulated that, if petitioners had duly and timely made a section 108(c) election, and actually reduced their basis according to section 1017, they would have qualified to exclude the $519,413 in cancellation of indebtedness income for their 1994 taxable year. Petitioners do not now contend that they properly elected to exclude such income under section 108(c).  Accordingly, we decide whether petitioners should be allowed the benefit of section 9100 relief to extend the time to make the section 108(c) election.

We have previously ruled on the availability of section 9100 relief as it pertained to the mark-to-market method of accounting under section 475(f).[5]  See Vines v. Commissioner, 126 T.C. 279 (2006).  Section 301.9100-3(a), Proced. & Admin. Regs., provides

---

[4]If petitioners were allowed to make a sec. 108(c)(3)(C) election and a concomitant sec. 1017 reduction in basis of the partner's proportionate interest in depreciable property held by that partnership, the partnership correspondingly must reduce the partnership's basis in depreciable property with respect to such partner.  Sec. 108(c)(3)(C).

[5]Subsequently, in Knish v. Commissioner, T.C. Memo. 2006-268, we found that sec. 9100 relief was unavailable under the facts of the case because the taxpayers used hindsight to make the mark-to-market election when it was most advantageous.

that the Commissioner must grant relief if the taxpayer provides evidence establishing to the Commissioner's satisfaction that two conditions are satisfied: (1) The taxpayer acted reasonably and in good faith, and (2) the interests of the Government will not be prejudiced by granting relief.

In Priv. Ltr. Rul. 137467-03, issued to petitioners with respect to the instant case, respondent ruled that petitioners must be denied section 9100 relief because the interests of the Government are deemed prejudiced pursuant to section 301.9100-3(c)(1), Proced. & Admin. Regs., which provides in pertinent part as follows:

> (c) Prejudice to the interests of the Government--(1) In general. The Commissioner will grant a reasonable extension of time to make a regulatory election only when the interests of the Government will not be prejudiced by the granting of relief. This paragraph (c) provides the standards the Commissioner will use to determine when the interests of the Government will be prejudiced.
>
>> (i) Lower tax liability. The interests of the Government are prejudiced if granting relief would result in a taxpayer having a lower tax liability in the aggregate for all taxable years affected by the election than the taxpayer would have had if the election had been timely made (taking into account the time value of money). Similarly, if the tax consequences of more than one taxpayer are affected by the election, the Government's interests are prejudiced if extending the time for making the election may result in the affected taxpayers, in the aggregate, having a lower tax liability than if the election had been timely made.

(ii) Closed years. The interests of the Government are ordinarily prejudiced if the taxable year in which the regulatory elections should have been made or any taxable years that would have been affected by the election had it been made are closed by the period of limitations on assessment under section 6501(a) before the taxpayer's receipt of a ruling granting relief under this section. The IRS may condition a grant of relief on the taxpayer providing the IRS with a statement from an independent auditor (other than an auditor providing an affidavit pursuant to paragraph (e)(3) of this section) certifying that the interests of the Government are not prejudiced under the standards set forth in paragraph (c)(1)(i) of this section.

In denying petitioners' request for section 9100 relief, respondent ruled in Priv. Ltr. Rul. 137467-03 as follows:

In this case, the government would be prejudiced under Section 301.9100-3(c)(1)(i) if we were to grant relief to file a late election because you would have a lower tax liability in the aggregate for all years affected by the election than you would have had if the election had been made timely. You filed returns for taxable year 1995 and all subsequent years taking depreciation deductions on property, the basis of which should have been exhausted had you timely made a Section 108(c)(3)(C) election. Taxable years 1995-2000 are now closed. Granting relief would permit you to exclude cancellation of indebtedness income in 1994. However, due to the expiration of the period of limitations the IRS cannot reduce or eliminate the depreciation deductions taken in Years 1995-2000. Thus, you would have a lower tax liability in the aggregate for all taxable years affected by the election than if you had made a timely election.

Section 301.9100-3(c)(1)(ii) contemplates that the interests of the Government might not be prejudiced where closed years are involved. However, those situations would appear to be where the amount of the tax the taxpayers would pay if relief were granted to make a late election would be the same as if the election were made timely. That is not the case here. The interests of the government would be prejudiced

because your depreciation deductions for the closed years (taxable years 1995-2000) are higher than they would have been if you had made a timely election and reduced your basis as required by Section 108(c)(1). Thus, you do not qualify for relief under Section 301.9100-3(c)(1)(ii).  Based on the above analysis, it is not necessary to address whether you would fail or meet the other tests to qualify for relief under Section 301.9100-3.

As noted above, petitioners counter respondent's prejudice argument by offering to refund any benefit they may have received during the closed years from depreciation deductions beyond exhaustible basis.  While petitioners' offer may be a possible avenue of settling the instant case with respondent, we are without jurisdiction over petitioners' closed taxable years.  The only taxable year over which we have jurisdiction is the year to which the Notice of Deficiency pertains; i.e., 1994.  Petitioners have failed to show that they did not receive the benefit of depreciation deductions in excess of the deductions that they would have had if they had properly elected to exclude the income under section 108(c)(3)(C) and concomitantly reduced their basis under section 1017.  Allowing petitioners to make a late section 108(c)(3)(C) election now would lead to a lower tax liability for all tax years affected by the election and result in prejudice to the interests of the Government.  Consequently, we hold that respondent would be prejudiced under section 301.9100-3(c)(1)(i), Proced. & Admin. Regs., if we were to allow petitioners to elect

to exclude the cancellation of indebtedness income for taxable year 1994.

Because petitioners fail to satisfy the second of the two conditions of section 301.9100-3(a), Proced. & Admin. Regs., we do not need to address the first condition of that provision; i.e., whether petitioners acted reasonably and in good faith. We conclude that petitioners are not entitled to section 9100 relief to make a late section 108(c)(3)(C) election.

We next consider whether petitioners are liable for the accuracy-related penalty under section 6662(a). Respondent determined that petitioners were liable for an accuracy-related penalty for 2004 of $10,747.

Pursuant to Rule 142(a)(1), the taxpayer generally bears the burden of proof. Section 7491(c) provides an exception to Rule 142(a)(1) and places the burden of production on the Commissioner to show that penalties are appropriate. Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001). However, as the examination of the instant case began before the effective date of section 7491, July 22, 1998, section 7491(c) does not apply. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001, 112 Stat. 726. Respondent asserts that petitioners bear the burden of production and the burden of persuasion on the penalty issues, and petitioners do not assert otherwise.

Respondent determined that petitioners are liable for the accuracy-related penalty for negligence or disregard of rules or regulations and/or a substantial understatement of income tax under section 6662 for 1994.

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations. Sec. 6662(b). The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Internal Revenue Code and any failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), affd. 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985). The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

Section 6664(c)(1) provides that a penalty shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position with respect to that portion and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith within the meaning of section

6664(c)(1) is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax. Regs.

The first ground for the section 6662(a) penalty relates to petitioners' partnership interest in Capital Concepts 82-I (CapCon 82-I).[6]  For petitioners' 1994 taxable year, the parties stipulated the inclusion of $202,459 as additional passive income from CapCon 82-I, less reductions for suspended losses of $14,398 from 1992 and $16,449 from 1993.

Petitioners argue that during 1991, Dr. Mezrah made a gift of the entire CapCon 82-I partnership interest to Mr. Buchman's son, Todd Buchman.  However, petitioners stipulated the inclusion of the aforementioned passive income from CapCon 82-I for the taxable year 1994, which stands in contrast to Dr. Mezrah's and Mr. Buchman's testimony at trial that petitioners intended to transfer ownership of their CapCon 82-I partnership interest to Todd Buchman in 1991.  Petitioners have failed to explain this discrepancy.  Consequently, we conclude that petitioners have failed to carry their burden of showing that they acted reasonably and in good faith in their failure to include the passive income from their CapCon 82-I partnership

---

[6]CapCon 82-I is distinct from CapCon 84-A, the partnership discussed above in relation to petitioners' claim for sec. 9100 relief.

interest on their return for taxable year 1994. Accordingly, we hold that petitioners are liable for the penalty pursuant to section 6662 for negligence.

The second ground for the section 6662(a) penalty relates to petitioners' misclassification of passive activity losses as ordinary losses that allegedly pertain to nonpassive activities. Respondent contends that petitioners misclassified three separate passive activities as ordinary losses.

Petitioners contend that they should not be liable for such penalties because they relied on professional advice. In order for a taxpayer's reliance on professional advice to constitute reasonable cause to negate a section 6662(a) accuracy-related penalty, the taxpayer must show that: (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. Thrane v. Commissioner, T.C. Memo. 2006-269. Mr. Buchman has served as petitioners' certified public accountant since 1970 or 1971. Petitioners argue that they lack accounting backgrounds and that the classification of losses was a highly technical matter. Petitioners have persuaded us, on the basis of the record, that they relied in good faith on their accountant to accurately report the losses. See Schwalbach v. Commissioner, 111 T.C. 215,

230-231 (1998).  Accordingly, we hold that petitioners have carried their burden regarding their good faith reliance on their accountant and are not liable for the accuracy-related penalties stemming from the mischaracterization of their passive activity losses.

We have considered the parties' remaining arguments and conclude that the arguments are either without merit or unnecessary to reach.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.