**Bernyce ADLER, Individually, and as Personal Representative of the Estate of Samuel I. Adler, Deceased, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 93–720T.

United States Court of Federal Claims.

Feb. 15, 1995.

Martin R. Press, Ft. Lauderdale, FL, for plaintiff. Lenore Schiller, Broad & Cassel, of counsel.

Thomas D. Sykes, Washington, DC, with whom was Asst. Atty. Gen. Loretta C. Argrett, for defendant.

1. In addition to regular income tax, the Internal Revenue Code imposes an alternative minimum tax. This alternative tax was designed to insure that all taxpayers with substantial income would pay at least a minimum amount of income tax. *See generally* M. Rose & J. Chommie, *Federal Income Taxation* § 3.38, at 195 (3d ed. 1988).

*OPINION*

MILLER, Judge.

This case is before the court after argument on cross-motions for summary judgment. The issue to be decided is whether plaintiff may recompute her regular and alternative minimum income tax liability for 1984 and 1985 using passive activity losses incurred in 1987 and 1988. Plaintiff seeks a refund of income taxes and estimated interest paid for the 1984 and 1985 tax years totalling $694,476.01.

## FACTS

The following facts are undisputed, unless otherwise noted. Samuel I. and Bernyce Adler filed joint federal income tax returns for 1987 and 1988. Mr. Adler subsequently died, and Mrs. Adler ("plaintiff") was appointed the personal representative of the Estate of Samuel I. Adler.

In 1987 and 1988, plaintiff reported significant passive activity losses (sometimes referred to as "PALs") arising from certain real estate investments. The PALs were partially deductible in computing plaintiff's taxable income for 1987 and 1988 for regular tax purposes. However, these PALs were not deductible at all in computing plaintiff's taxable income for alternative minimum tax (sometimes referred to as "AMT") purposes for those years because of changes in the law brought about by the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085 (codified at 26 U.S.C.).[1] Plaintiff thus obtained no tax savings from the PALs in computing the AMT due for 1987 and 1988.

Plaintiff's 1987 tax return reflects $1,820,-679.00 in alternative minimum taxable income ("AMTI") and $382,343.00 in AMT owed for that year. Plaintiff's 1988 tax return reflects $1,486,710.00 in AMTI and $312,209.00 in AMT owed for that year. Plaintiff carried back PALs sustained in taxable years 1987 and 1988 to reduce AMT

liability for 1984 and 1985, respectively. The Internal Revenue Service (the "IRS") disallowed those carrybacks to 1984 and 1985 and assessed additional AMT for 1984 and 1985.

On November 24, 1993, after paying the additional AMT and related interest and exhausting all administrative remedies, plaintiff filed the instant lawsuit.

## DISCUSSION

▮ 1. The Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085 (codified at 26 U.S.C.) (the "1986 Code"), represents a comprehensive revision of the federal tax system. A primary impetus for enactment of the 1986 amendments was congressional concern that ordinary taxpayers had lost faith in the federal tax system because of a widespread perception that the existing code favored high-income taxpayers. Section 469 of the Tax Reform Act of 1986 addressed this concern directly by limiting the deductibility of passive activity losses. Passive activities are those in which the taxpayer does not materially participate.[2] The reasons underlying enactment of section 469 were explained by the Senate:

> [The public's] loss of confidence has resulted in large part from the interaction of two of the system's principal features: its high marginal rates ... and the opportunities it provides for taxpayers to offset income from one source with tax shelter deductions and credits from another. ...
>
> Extensive shelter activity contributes to public concerns that the tax system is unfair, and to the belief that tax is paid only by the naive and unsophisticated. This, in turn, not only undermines compliance, but encourages further expansion of the tax shelter market, in many cases diverting investment capital from productive activities to those principally or exclusively serving tax avoidance goals.

> The ... most important sources of support for the Federal income tax system are the average citizens who simply report their income (typically consisting predominantly of items such as salaries, wages, pensions, interest, and dividends) and pay tax under the general rules. To the extent that these citizens feel that they are bearing a disproportionate burden with respect to the costs of government because of their unwillingness or inability to engage in tax-oriented business activity, the tax system itself is threatened.

S.Rep. No. 313, 99th Cong., 2d Sess. 713–14 (1986). Section 469 therefore was enacted to restore public confidence in the Federal tax system by limiting the extent to which certain taxpayers could offset ordinary income with losses arising from activities in which they did not have "a substantial and *bona fide* involvement." *Id.*

Plaintiff seeks to recalculate the amount of taxes owed in 1984 and 1985 by deducting from her income in those years PALs incurred in 1987 and 1988. Specifically, plaintiff argues that she is entitled to recompute her 1984 and 1985 regular tax net operating loss deduction ("Reg.Tax NOL deduction") and her 1984 and 1985 alternative minimum tax net operating loss deduction ("AMT NOL deduction") using a carryback of PALs that were unused in her Reg.Tax NOL deduction in 1987 and 1988. Plaintiff submits that the Internal Revenue Code of 1954 (the "1954 Code"), not the 1986 Code, governs the recomputation of these deductions, because the 1954 Code was in effect during the 1984 and 1985 tax years.[3]

Plaintiff contends that the 1954 Code allows the deductibility of PALs from both regular and AMT income. Plaintiff points to 1954 I.R.C. § 55(b), which provides that "the term 'alternative minimum taxable income'

---

**2.** The Code as amended in 1986 is cited as "1986 I.R.C." The 1986 Code defines passive activity as "any activity. ... which involves the conduct of any trade or business, and. ... in which the taxpayer does not materially participate." 1986 I.R.C. § 469(c)(1).

1986 I.R.C. § 469(h)(1)(A)–(C) defines material participation as involvement "in the operations of an activity which is—regular, continuous, and

substantial." Passive activity loss is defined to mean "the amount (if any) by which—the aggregate losses from all passive activities for the taxable year, exceed the aggregate income from all passive activities for such year." 1986 I.R.C. § 469(d)(1)(A)–(B).

**3.** The 1954 Code found at 26 U.S.C. 1982 ed. is cited as "1954 I.R.C."

means the adjusted gross income ... of the taxpayer for the taxable year" reduced by, among other things, "the alternative tax net operating loss deduction." Section 55(d) defines the alternative tax net operating loss deduction to mean the net operating loss deduction for the taxable year under section 172, subject to certain adjustments. Section 55(d)(2)(A) provides that the net operating loss shall

> (i) be reduced by the amount of the items of tax preference arising in such year which are taken into account in computing the net operating loss, and

> (ii) be computed by taking into account only itemized deductions which are alternative tax itemized deductions for the taxable year and which are otherwise described in section 172(c).

Plaintiff appears to argue that PALs are not precluded by either category listed in section 55(d)(2)(A) and are therefore fully deductible from both regular and AMTI generated in the 1984 and 1985 tax years.

■ Plaintiff overlooks settled caselaw that requires a taxpayer to determine a particular loss under the law in effect during the loss year. *See, e.g., Reo Motors, Inc. v. Commissioner*, 338 U.S. 442, 450, 70 S.Ct. 283, 287, 94 L.Ed. 245 (1949) ("[The] net operating loss must be computed solely on the basis of the statutes in effect during the taxable year when the loss was incurred...."); *American Bank & Trust Co. v. United States*, 333 F.2d 416, 418 (5th Cir.1964) ("[T]he calculation of the loss is governed by the law of the year when the events requiring such a calculation occurred...."); *United States v. Whitney Land Co.*, 324 F.2d 33, 37 (8th Cir.1963) ("[T]he net operating loss shall be determined under the law applicable to the loss year...."); *see also* Treas.Reg. § 1.172-1(e)(2) (1994) ("[T]he net operating loss for any taxable year shall be determined under the law applicable to that year without regard to the year to which it is to be carried

and in which, in effect, it is to be deducted as part of the net operating loss deduction.").[4]

*Zilber v. United States*, 585 F.2d 301 (7th Cir.1978), upon which plaintiff relies, is not to the contrary. In that case the taxpayer carried back net operating losses arising from certain tax preference items in 1971 and 1972 to years prior to the enactment of minimum tax provisions. The taxpayer argued that since the minimum tax imposed applied only after December 31, 1969, no minimum tax would apply where the tax benefits of the net operating losses for 1971 and 1972 were carried back to years prior to December 31, 1969. In rejecting this argument, the Seventh Circuit noted that the minimum tax is imposed "in the year the preference item arose, rather than the year to which they were carried." 585 F.2d at 305.

■ Plaintiff reads *Zilber* for the proposition that "each varying set of minimum tax rules appl[ies] to just those years governed by the respective set of rules." Plf's Br. filed Oct. 20, 1994, at 14. Defendant, however, is not arguing that a taxpayer cannot compute AMT NOL deductions for 1984 and 1985 under the law applicable in those years. Instead, defendant advances the quite different argument that PALs disallowed in the computation of both Reg.Tax NOL and AMT NOL deductions, pursuant to law in effect during the loss year, may not be carried back to offset income generated in a previous year. *Zilber* supports, rather than undercuts, defendant's position, because the net operating losses in that case were calculated properly under the law in effect during the loss years. *See Zilber*, 585 F.2d at 301–302. In the case at bar, the 1986 Code is the law in effect during the loss years 1987 and 1988 and thus governs the computation of net operating losses incurred in those years.

■ 2. The 1986 Code disallows the use of PALs in computing AMT NOLs and only partially allows their use in computing Reg. Tax NOLs. 1986 I.R.C. § 58(b)(2) concerning the disallowance of PALs, provides, in

<hr/>

4. Plaintiff states that she "agrees with the policy of that case law." Plf's Br. filed Oct. 20, 1994, at 13–14. Yet, plaintiff attempts to distinguish these cases by noting that they concern Reg.Tax NOLs and "not losses for AMT purposes." *Id.*

Even if this distinction were meaningful, which it is not, plaintiff is not assisted. Plaintiff herself is attempting to carry back PALs that are attributable to Reg.Tax NOLs computed under the 1986 Code.

relevant part: "In computing the alternative minimum taxable income of the taxpayer for any taxable year, section 469 shall apply, except that in applying section 469—.... the provisions of section 469(m) (relating to phase-in of disallowance) shall not apply." 1986 I.R.C. § 469(a)(1)(A), (B) states: "If for any taxable year the taxpayer is ... [an individual], neither ... the passive activity loss, nor ... the passive activity credit ... for the taxable year shall be allowed."

1986 I.R.C. § 469(m)(1), (2) provides for the disallowance of a certain percentage of PALs arising in calendar years beginning in 1987. For 1987 the percentage is 65 percent, and for 1988 the percentage is 40 percent. 26 U.S.C.A. § 469(m)(2) (West Supp.1994). Those PALs that are disallowed in computing Reg.Tax NOLs under the 1986 Code must be carried forward and not carried back. 1986 I.R.C. § 469(b) states: "Except as otherwise provided in this section, any ... [PAL] shall be treated as a deduction ... in the next taxable year." Thus, the 1986 Code expressly provides for the use of a percentage of PALs in computing net operating losses for 1987 and 1988, but expressly disallows the remaining PALs to be used in computing net operating losses for those years.[5]

Plaintiff does not contest the plain meaning of the passive activity rules; rather, plaintiff argues that the rules limiting the deductibility of PALs are "statutorily limited as applying only for purposes of computing AMTI *for the years beginning after December 31, 1986,* unless otherwise specifically stated in the Statute." Plf's Br. filed Oct. 20, 1994, at 9 (emphasis in original). Therefore, according to plaintiff, the IRS may not apply the 1986 Code retroactively in order to prevent plaintiff's recalculation of 1984 and 1985 AMTI.

Plaintiff both misreads the import of the 1986 Code and mischaracterizes defendant's argument. The focus of this case is on which losses arising in 1987 and 1988 may be carried back, not on whether AMTI generated in 1984 and 1985 may be recalculated. As noted, defendant argues that the relevant

provisions of the 1986 Code—1986 I.R.C. §§ 58(b), 469(a), (b), (m)—operate in conjunction to disallow certain PALs in the computation of Reg.Tax NOLs and AMT NOLs for 1987 and 1988. Therefore, the provision limiting application of the passive loss rules to years beginning after December 31, 1986, works in favor of defendant's argument that net operating losses must be calculated pursuant to the law in effect during the loss years.

■ While a particular net operating loss must be computed under the law in effect during the year in which the loss is incurred, the amount of a net operating loss that may be carried back as a deduction is governed by the law in effect during the carryback year. *Reo Motors* instructs that "[t]he amount of net operating loss which may be utilized as a carry-over or carry-back and the extent to which it may be used as an offset to net income in another year depend upon the law of the year in which the 'carry' is effective...." 338 U.S. at 450, 70 S.Ct. at 287; *see also American Bank & Trust,* 333 F.2d at 419 ("'The amount of the net operating loss deduction which shall be allowed for any taxable year shall be determined under the law applicable to that year.'") (quoting Treas.Reg. § 1.172–1(e)(1)(iii)). Thus, the 1954 Code governs the amount of the net operating loss computed for 1987 and 1988 that may be carried back and deducted from taxable income in 1984 and 1985.

■ The 1954 Code provides only for the carryback of certain net operating losses. *See* 1954 I.R.C. § 172. Thus, PALs arising in one year can only be carried back to a prior year to the extent they constitute an element of a net operating loss calculated under the law in effect during the loss year. While certain PALs remain unused in 1987 and 1988, the 1986 Code expressly disallows these losses to enter into a computation of net operating losses for 1987 and 1988. Therefore, no net operating loss is available for plaintiff to carry back.

---

5. Plaintiff fully utilized the percentage of PALs permitted by the 1986 Code in calculating her Reg.Tax NOLs for 1987 and 1988. Plaintiff now seeks to carry back the remaining PALs unused in these loss years.

3. Several additional difficulties exist with plaintiff's position. Plaintiff ignores the fact that Congress was determined initially to limit, and then ultimately prohibit, the deductibility of PALs. The primary purpose of limiting PAL deductions was to prevent high-income taxpayers from avoiding an appropriate tax burden and thereby to restore public confidence in the Federal tax system. *See* S.Rep. No. 313, 99th Cong., 2d Sess. 713–14 (1986). To allow plaintiff to circumvent the passive activity rules would be inconsistent with this broad policy goal.

Plaintiff's position is also inconsistent with the precise method by which Congress limited the carryforward of post–1986 PALs. 1986 I.R.C. § 469(b) provides that any passive activity loss "which is disallowed ... shall be treated as a deduction or credit allocable to such activity in the next taxable year." In other words, passive activity losses may only be utilized to the extent that they offset passive activity income. Section 469 establishes a separate regime, or "basket," for tax activity related to passive investments. *See* B. Bittker & P. Lokken, *Federal Taxation of Income, Estates and Gifts* 28–4 (2d ed. 1989) ("Section 469 creates a basket containing all of a taxpayer's investments from passive activities, and isolates losses and credits within the basket from other income."); M. Graetz, *Federal Income Taxation* 440 (2d ed. 1988).

■ The basket approach implemented in section 469(b) "prevents a net loss from all passive activities from being deducted against other income." *Federal Taxation of Income*, at 28–4; *see, e.g.,* 1986 I.R.C. § 165(d) (limiting deductibility of gambling losses to gambling income); 1986 I.R.C. § 163(d) (limiting deductibility of investment interest to investment income). However, plaintiff attempts to carry back and deduct her disallowed PALs against income that may or may not be related to passive activity. As a consequence, plaintiff's attempted carryback directly undermines Congress' intent that PALs only be utilized to offset passive gains. Plaintiff's disallowed PALs may not be carried back to years governed by the 1954 Code, because that Code does not provide a "basket" of passive income against which plaintiff's disallowed PALs may be deducted.

■ 4. Plaintiff points to the unfairness of preventing her from carrying back the 1987 and 1988 PALs, since these losses arose from investments made in reliance on the prior law. However, the potential adverse impact of the 1986 Code on pre-enactment investments specifically was taken into account when Congress included the phase-in mechanism at 1986 I.R.C. § 469(m). *See* 132 Cong.Rec. 12,458 (1986) (statement of Sen. Moynihan) ("The gradual phasing in of the provision ... will mitigate its effect on investments made in reliance on current law...."). Moreover, the fact that plaintiff may still carry her disallowed PALs forward, via I.R.C. § 469(b), would seem to counteract the purported inequity of not being able to carry such losses back.

Plaintiff cites to portions of the legislative history wherein members of Congress criticize the use of PALs to reduce tax liability. *See, e.g.,* 132 Cong.Rec. 12,458 (1986) (statement of Sen. Moynihan). Senator Moynihan was particularly vituperative in condemning the deductibility of PALs:

> It is precisely the fact that our Tax Code has led to a near industry of passive investment enterprises designed to lose money that illustrates the near perversity of the arrangements that we come to. The object becomes to lose money—that is, to show a loss from a passive investment....
>
> ....
>
> The legislation we begin to consider today introduces the distinction between positive income and passive losses into the Internal Revenue Code and with this one principle drives a stake into the heart of tax sheltering activities in this country.

*See also* 132 Cong.Rec. 26,481 (1986) (statement of Sen. Packwood) (criticizing the deductibility of losses arising from investments in "llamas, kangaroos, ... [and] syndicated shares of a greyhound."). Plaintiff argues that her underlying investment—commercial real estate—was not transparent as were some of the more egregious examples cited. Plaintiff is correct, but Congress chose to cast a wide net.

5. Plaintiff also argues that if she is allowed to compute her tax liability for 1984 and 1985 under the 1954 Code, the purposes of the AMT are not frustrated since she still bears significant tax liability. Plaintiff's argument does not bear on the narrow legal issue before the court. Even if the purposes of the AMT were the proper focus of this case, which they are not, they do not assist plaintiff. The legislative history of the Tax Reform Act of 1986 indicates that " 'the minimum tax should serve one overriding objective: to ensure that no taxpayer with substantial economic income can avoid significant tax liability by using exclusions, deductions, and credits.' " H.R.Rep. No. 426, 99th Cong., 1st Sess. 305–06 (1985) (quoted in M. Rose & J. Chommie, *Federal Income Taxation* § 3.38, at 195 (3d ed. 1988)). Congress' decision to disallow the carryback of certain PALs arising in 1987 and 1988 that did not enter into a computation of net operating losses for those years is fully consistent with the "overriding objective" of the minimum tax.

Accordingly, plaintiff may not carry back those PALs unused in 1987 and 1988 in order to recompute her tax liability for 1984 and 1985.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment is granted, and plaintiff's cross-motion is denied. The Clerk of the Court shall enter judgment dismissing the complaint.

IT IS SO ORDERED.

No costs.