T.C. Memo. 1999-301


UNITED STATES TAX COURT


CHESTER F. AND FAYE L. SIDELL, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10489-98.               Filed September 4, 1999.


Respondent recharacterized the income
petitioner husband received from the rental of
property to his wholly owned C corporation
from passive to nonpassive, pursuant to the
attribution rule of sec. 1.469-4(a), Income
Tax Regs., and the so-called self-rented
property rule contained in sec. 1.469-2(f)(6),
Income Tax Regs. As a consequence of this
recharacterization, petitioners were able
neither to reduce such rental income by losses
from other rental properties nor to use
certain rehabilitation credits.

1. Held: Pursuant to sec. 469(l),
I.R.C., the Secretary properly promulgated the
attribution and self-rented property rules.
The self-rented property rule (by virtue of
the attribution rule) is valid insofar as it
recharacterizes rental income received by a

controlling shareholder from a C corporation from passive to nonpassive. See <u>Schwalbach v. Commissioner</u>, 111 T.C. 215 (1998).

2. <u>Held</u> <u>further</u>: The transitional relief provided in sec. 1.469-11(b), Income Tax Regs., is of no benefit to petitioners in determining their 1993 and 1994 tax liability because sec. 1.469-4, Proposed Income Tax Regs., 57 Fed. Reg. 20804 (May 15, 1992), PS-1-89, 1992-1 C.B. 1219, is silent as to whether the activities of a C corporation are or are not attributable to the corporation's shareholder.

3. <u>Held</u> <u>further</u>: Respondent properly disallowed rehabilitation credits claimed by petitioners for 1993 and 1994 because once their net rental income for those years is recharacterized as nonpassive, the limitation on passive activity credits mechanically disallows the claimed credits.

<u>David R. Andelman</u> and <u>Juliette Galicia Pico</u>, for petitioners.

<u>Mary P. Hamilton</u>, <u>David N. Brodsky</u>, and <u>Maura A. Sullivan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>: Respondent determined deficiencies and an accuracy-related penalty under section 6662(a) with respect to petitioners' Federal income taxes, as follows:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|-----------|
| 1993 | $103,728 | --- |
| 1994 | 41,621 | $8,324 |

The deficiencies stem from respondent's recharacterizing the income Chester F. Sidell (Mr. Sidell) received from the rental of properties to his wholly owned C corporation from passive to nonpassive. Respondent now concedes the accuracy-related penalty under section 6662(a) for 1994.

The issues for decision are: (1) Whether respondent's recharacterization of the rental income Mr. Sidell received from his wholly owned C corporation was proper; and if so, (2) whether respondent properly disallowed the rehabilitation credits petitioners claimed for those years.

All section references are to the Internal Revenue Code as in effect for the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference.

Petitioners, husband and wife, resided in Framingham, Massachusetts, at the time they filed their petition contesting respondent's determinations. For both years in issue, petitioners filed joint Federal income tax returns.

Acquisition of Rental Properties

Mr. Sidell was the sole beneficiary of five trusts: The Manche Realty Trust, CFS Realty Trust, FLS Realty Trust, GES Realty Trust, and RMS Realty Trust. All five trusts are nominee trusts

under Massachusetts law and constitute grantor trusts for Federal income tax purposes. All income, deductions, and credits of these trusts were reported as pass-through items on petitioners' 1993 and 1994 Federal income tax returns.

On November 8, 1985, Manche Realty Trust acquired title to the land and building known as the Everett Mill Cotton Weaving House (the Everett Mill property), located at 181-183 Canal Street, Lawrence, Massachusetts. The Everett Mill property is located in a National Register historical district. Immediately after its purchase in 1985, the Everett Mill property was leased to KGR, Inc. (KGR), Mr. Sidell's wholly owned corporation. At the time of its acquisition, the Everett Mill property was in poor condition.

On July 6, 1992, Mr. Sidell executed an agreement for the acquisition of the land and building known as Kunhardt Mill, located at 60 Island Street, Lawrence, Massachusetts. The Kunhardt Mill property is a historic mill dating back to the late 1800's and is located across the street from the Everett Mill property in the same National Register historical district. On October 14, 1992, CFS Realty Trust (rather than Mr. Sidell) took title to the Kunhardt Mill property. At the time of its acquisition, the Kunhardt Mill property needed substantial repair. After its acquisition, the Kunhardt Mill property was leased to KGR. The property was subsequently renovated and thereafter used as KGR's corporate headquarters.

On February 23, 1993, FLS Realty Trust acquired the land and building located at Canal, Mill, and Methuen Streets, Lawrence, Massachusetts (the FLS Realty Trust property).  This property was subsequently leased to KGR to alleviate a parking shortage around KGR's offices.

On July 14, 1993, and May 16, 1994, respectively, GES Realty Trust and RMS Realty Trust acquired properties located near the Everett Mill, Kunhardt Mill, and FLS Realty Trust properties. These properties were acquired in anticipation of future expansion of KGR's business; they were not rented to KGR during the years in issue.

KGR

KGR, incorporated in Massachusetts, has its principal place of business in Lawrence, Massachusetts. For Federal income tax purposes it is a subchapter C corporation.  KGR is engaged in the business of manufacturing women's and children's apparel under private labels for such customers as Nordstrom, Talbots, and Dillards.

During the years in issue, petitioner was the president, treasurer, and sole director of KGR.  With the exception of its retail sales operation, which was managed by Mrs. Sidell, Mr. Sidell managed every facet of KGR's day-to-day activities.

Rehabilitation of Everett Mill/Kunhardt Mill Properties

On May 16, 1986, Mr. Sidell submitted a historical preservation application to the U.S. Department of the Interior requesting certification that the Everett Mill property was a "certified historic structure". Certification was subsequently granted by the National Park Service (Park Service). Thereafter, in 1989 and 1990, substantial rehabilitation, repairs, and modifications were made to the Everett Mill property. Petitioners claimed rehabilitation credits for the rehabilitation expenditures in 1989 and 1990. The rehabilitation credits for these years were allowed and are not at issue in this case.

Seeking similar tax treatment for the Kunhardt Mill property, and concurrently with its acquisition, Mr. Sidell (on behalf of CFS Realty Trust) instituted a major rehabilitation project with respect to the property. After repairs and renovations had begun on the Kunhardt Mill property, Mr. Sidell submitted a historic preservation certification application on March 23, 1993, to the U.S. Department of the Interior seeking a determination that the work previously done on the property conformed with its "Standards for Rehabilitation". After Mr. Sidell completed the rehabilitation project, the Park Service preliminarily determined that the work performed on the Kunhardt Mill property was eligible for "certified rehabilitation" status. Subsequently, on September 23, 1994, Mr. Sidell submitted a "Historic Preservation Certification Application

Request for Certification of Completed Work" to the Park Service. Rehabilitation costs totaling $1,701,988 in 1993 and $84,435 in 1994 were incurred with regard to the rehabilitated Kunhardt Mill property.[1] An additional $200,000 was incurred in related costs associated with obtaining "qualified rehabilitation" status.

Petitioners' 1993 and 1994 Federal Income Tax Returns

Petitioners timely filed their 1993 and 1994 Federal income tax returns. On their returns, petitioners reported the following net rental income:

| Property | Net Rental Income/(Loss) | |
| --- | --- | --- |
| | 1993 | 1994 |
| Manche/Everett Mill property | $122,139 | $45,936 |
| CFS/Kunhardt Mill property | 138,451 | (5,335) |
| FLS property | (42,758) | 57,894 |
| GES property | (2,272) | (25,315) |
| RMS property | N/A | (11,855) |
| Rental activities with net income | 260,590 | 103,830 |
| Rental activities with net loss | (45,030) | (42,505) |
| Net rental income | 215,560 | 61,325 |

Petitioners also claimed rehabilitation credits of $85,361 in 1993 and $24,284 in 1994 with regard to the Kunhardt Mill property renovations.

_____

[1] The record does not enable us to account for the discrepancy between the stipulated amounts of rehabilitation costs for 1993 ($1,701,988) and 1994 ($84,435) and the amounts reflected on petitioners' Federal tax returns for 1993 ($1,734,163) and 1994 ($89,725).

Notice of Deficiency

In the notice of deficiency dated March 11, 1998, respondent recharacterized the positive 1993 income from the Everett Mill and Kunhardt Mill properties and the positive 1994 income from the Everett Mill and FLS Realty Trust properties from passive to nonpassive pursuant to section 1.469-2(f)(6), Income Tax Regs.; the recharacterization resulted in petitioners' 1993 and 1994 taxable income being increased by $45,030 and $42,505, respectively. In addition, as a consequence of respondent's recharacterization, respondent determined that petitioners' regular tax liability allocable to all passive activities for 1993 and 1994 was insufficient to enable them to use the rehabilitation credits claimed for those years. See sec. 469(d)(2).

OPINION

Central to the dispute in this case is the validity of the so-called self-rented property rule contained in section 1.469-2(f)(6), Income Tax Regs., which provides:

> Property rented to a nonpassive activity.--An amount of the taxpayer's gross rental activity income for the taxable year from an item of property equal to the net rental activity income for the year from that item of property is treated as not from a passive activity if the property--
>
> (i) Is rented for use in a trade or business activity * * * in which the taxpayer materially participates * * * for the taxable year.

Pursuant to this rule, and by virtue of the attribution rule of

section 1.469-4(a), Income Tax Regs.,[2] respondent recharacterized the rental income Mr. Sidell received in 1993 and 1994 from the three properties leased to his wholly owned C corporation from passive to nonpassive.

As a consequence of this recharacterization, petitioners were neither able to reduce such rental income by the losses from other rental properties nor able to utilize certain rehabilitation credits.

Section 469 and the Self-Rented Property Rule

Pursuant to section 469(a), in general, a taxpayer is denied both a passive activity loss and a passive activity credit for the taxable year in which they arise. A passive activity loss is defined as the amount by which the aggregate losses from all passive activities exceeds the aggregate income from all passive activities for such years. See sec. 469(d)(1). Likewise, a passive activity credit is defined as the amount by which the sum of all allowable credits from passive activities exceeds the regular tax liability of the taxpayer allocable to all passive activities. See sec. 469(d)(2).

Section 469 specifically excludes certain transactions and

---

[2] Sec. 1.469-4(a), Income Tax Regs., provides, among other things, that for grouping a taxpayer's trade or business activities and rental activities for purposes of applying the passive activity loss and credit limitations rules of sec. 469, a taxpayer's activities include those conducted through C corporations that are subject to sec. 469.

activities from its purview. Where a taxpayer "materially participates" in a trade or business, the activity is excluded from being classified as "passive". Sec. 469(c)(1). Ultimately, neither a passive activity loss nor a passive activity credit is permanently disallowed. Rather, they are suspended until the taxpayer either has offsetting passive income or disposes of his entire interest in the passive activity. See sec. 469(b), (g).

The passive activity rules reflect Congress' concern over the widespread use of tax shelters that allowed taxpayers to avoid paying tax on unrelated income. See Schaefer v. Commissioner, 105 T.C. 227, 230 (1995). In large part, section 469 was intended to "restore public confidence in the Federal tax system" by limiting the ability of taxpayers to derive tax preferences from activities in which they did not have a "substantial and bona fide involvement". Adler v. United States, 32 Fed. Cl. 736, 738 (1995); see S. Rept. 99-313, at 713 (1986), 1986-3 C.B. (Vol. 3) 1, 713-714; see also St. Charles Inv. Co. v. Commissioner, 110 T.C. 46, 49-50 (1998). As noted previously, pursuant to section 469, passive losses are allowed only to the extent of passive income. Congress gave the Secretary broad authority to promulgate rules and regulations under section 469. See Schwalbach v. Commissioner, 111 T.C. 215, 220 (1998),[3] wherein this Court held that neither the

---

[3] In Schwalbach v. Commissioner, 111 T.C. 215 (1998), the
(continued...)

recharacterization rule of section 1.469-2(f)(6), Income Tax Regs., nor the attribution rule of section 1.469-4(a), Income Tax Regs., is invalid because of an alleged failure to comply with the procedural notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. sec. 553(b) and (c) (1994), with respect to section 1.469-4(a), Income Tax Regs.

It was envisioned that by promulgating regulations regarding "related party leases or sub-leases", the Secretary would be acting consistently with section 469.  See Fransen v. United States, 82 AFTR 2d 6621, 98-2 USTC par. 50776 (E.D. La. 1998) (quoting H. Conf. Rept. 99-841 (Vol. II), at II-146 (1986), 1986-3 C.B. (Vol. 4) 1, 147).  The court in Fransen (in granting summary judgment for the Government) upheld the Commissioner's determination that rental income received by the taxpayer husband, an attorney, from his

---

³(...continued)
taxpayer husband (Dr. Schwalbach) practiced dentistry and was employed by a personal service corporation (Associated Dentists) he owned equally with another dentist.  Dr. Schwalbach owned a building that he rented to Associated Dentists for use in its dentistry practice.  The taxpayers reported $50,556 in 1994 as the net income from the rental of the building to Associated Dentists.  The taxpayers attempted to offset this income with certain losses derived from unrelated activities, namely:  (a) A rental loss from a commercial building apparently rented to an unrelated tenant; (b) a passive loss from an investment in an S corporation unrelated to the dentistry practice; and (c) a passive loss from an investment in a partnership also unrelated to the dentistry practice.  In the aggregate, the losses claimed totaled $18,115.  The Commissioner applied the self-rented property rule and thereby disallowed the losses.  We sustained the Commissioner's determination.

wholly owned personal service C corporation had to be recharacterized as nonpassive because the building was rented to a trade or business in which the taxpayer materially participated.[4] In doing so, the court upheld the validity of the self-rented property rule, citing the following portion of the preamble to section 1.469-2T(f)(6), Temporary Income Tax Regs., 53 Fed. Reg. 5694 (Feb. 25, 1988):[5]

> In the absence of regulations, a taxpayer could derive passive activity gross income from an active business in which tangible property is used by renting the property to an entity conducting the activity (or by causing an entity holding the property to rent the

---

[4] In <u>Fransen v. United States</u>, 82 AFTR 2d 6621, 98-2 USTC par. 50776 (E.D. La. 1998), the taxpayer husband was the sole shareholder of Fransen & Hardin, a personal service corporation. The taxpayers leased a building (in which each had an undivided one-half interest) to Fransen & Hardin. The taxpayers reported $29,902 of net rental income which they sought to offset with passive activity losses from other activities in the aggregate amount of $32,606. The taxpayers argued that sec. 1.469-2(f)(6), Income Tax Regs., "flatly contradicts the plain language of the statute it purports to enforce: the statute deems rental activity income passive with a minor exception, and the regulation's allowance of recharacterization of that income as non-passive renders the regulation invalid."

[5] We note that the preamble further states:

the Conference Report accompanying the Act states that it would be appropriate for the Service to exercise its regulatory authority under sec. 469(l)(3) in the case of "related party leases or sub-leases, with respect to property used in a business activity, that have the effect of reducing active business income and creating passive income." H. Conf. Rept. 99-841, 99th Cong., 2d Sess., Vol. II, at 147 (1986) [53 Fed. Reg. 5725 (Feb. 25, 1988).]

property to the taxpayer). It would be
inconsistent with the purposes of section 469
to treat rental income as passive activity
gross income in such cases * * *

In successive attempts to define the scope of the self-rented property rule, numerous sets of regulations were promulgated. In both sets of temporary regulations, promulgated on February 25, 1988, and May 12, 1989, respectively, activities conducted through a C corporation were excluded from being attributed to the taxpayer/shareholder for purposes of determining "material participation". See sec. 1.469-5T(f), Temporary Income Tax Regs., 53 Fed. Reg. 5686, 5725 (Feb. 25, 1988), T.D. 8175, 1988-1 C.B. 191, 235; sec. 1.469-4T(b)(2)(ii)(B), Temporary Income Tax Regs., 54 Fed. Reg. 20527, 20543 (May 12, 1989), T.D. 8253, 1989-1 C.B. 121.[6] Pursuant to the sunset provisions of section 7805(e)(2),[7] the second set of temporary regulations (section 1.469-4T(b)(2)(ii)(B)), expired on May 11, 1992.

On May 15, 1992, section 1.469-4, Proposed Income Tax Regs., 57 Fed. Reg. 20802, 20804 (May 15, 1992), PS-1-89, 1992-1 C.B.

_____

[6] Proposed regulations adopting the definition of "activity" for purposes of applying the limitations on passive activity losses and passive activity credits as set forth in the second set of temporary regulations were issued concurrently (i.e., May 12, 1989) with the promulgation of the second set of temporary regulations. See PS-001-89, 54 Fed. Reg. 20606 (May 12, 1989), 1989-1 C.B. 1057.

[7] Sec. 7805(e)(2) provides: "Any temporary regulation shall expire within 3 years after the date of issuance of such regulation."

1219, 1221, was promulgated. In the text of these proposed regulations, the Secretary removed the explicit statement prohibiting attribution from a C corporation to the corporation's shareholders. No further specific guidance as to the Secretary's ultimate position on this subject matter was then provided. However, the preamble to the regulation stated that "[The proposed regulation] propose to replace § 1.469-4T with a new § 1.469-4, which will provide a modified definition of the term activity." Id. at 20802.

In 1994, the proposed regulations issued in 1992 were replaced by the final version of section 1.469-4(a), Income Tax Regs., which included the following sentence: "A taxpayer's activities include those conducted through C corporations that are subject to section 469, S corporations, and partnerships." Sec. 1.469-4(a), Income Tax Regs. This represented a reversal of the Secretary's position enunciated in the temporary regulations published in 1989. It is worth noting that the preamble to the final regulations stated:

> A commentator requested clarification on whether activities conducted through a C corporation may be grouped with activities not conducted through the C corporation. The final regulations clarify that in determining whether a taxpayer materially or significantly participates in an activity, a taxpayer may group that activity with activities conducted through C corporations that are subject to section 469 (that is, personal service and closely held C corporations). [59 Fed. Reg. 50485 (Oct. 4, 1994), T.D. 8565, 1994-2 C.B. at 82.]

See Schwalbach v. Commissioner, supra at 225.

The final regulations were generally made effective for taxable years beginning after May 10, 1992. See sec. 1.469-11(a)(1), Income Tax Regs. However, section 1.469-11(b)(1), Income Tax Regs., provides transitional relief for taxable years that end after May 10, 1992, and begin before October 4, 1994. Under the transitional rules, taxpayers are allowed to determine their tax liability in accordance with the proposed regulations promulgated in 1992. See sec. 1.469-11(b)(1), Income Tax Regs.

Positions of the Parties

The parties disagree as to the proper characterization of the rental income from the Everett Mill, Kunhardt Mill, and FLS Realty Trust properties.

Petitioners seek to have the income Mr. Sidell received in 1993 and 1994 from the rental of these properties characterized as income from a passive activity in order to use (1) passive losses from the rental of other properties, and (2) rehabilitation credits (claimed on their 1993 and 1994 returns) with respect to renovations made to the Kunhardt Mill property.

Respondent relies on the self-rented property rule contained in section 1.469-2(f)(6), Income Tax Regs., to support his characterization of the rental income from these properties as nonpassive (or active) income. Respondent maintains that pursuant to section 469(l), the Secretary had the authority to prescribe regulations necessary or appropriate to carry out the provisions of

section 469, including regulations requiring net income or gain from a limited partnership or other passive activity to be treated as not from a passive activity. See sec. 469(l)(3). Continuing, respondent posits that pursuant to that authority, the Secretary properly promulgated the self-rented property rule, which recharacterizes rental income as nonpassive (or active) income when a taxpayer rents property to an activity in which the taxpayer materially participates.

Petitioners challenge respondent's determinations, making three arguments. First, petitioners assert that section 1.469-2(f)(6), Income Tax Regs., is invalid insofar as it recharacterizes rental income received from a C corporation from passive to nonpassive (hereinafter this argument is referred to as petitioners' validity argument). Petitioners maintain that in order for the self-rented property rule to apply, (1) the property must be rented for use in a trade or business activity in which the taxpayer materially participates, and (2) the activities of a C corporation cannot be attributed to a taxpayer/shareholder in determining whether that taxpayer has materially participated in the corporation's business activity. According to petitioners, application of section 1.469-2(f)(6), Income Tax Regs., to a C corporation is contrary to the plain language, origin, and purpose of the passive activity rules.

Second, petitioners argue that even if the application of the self-rented rule to a closely held C corporation is deemed valid, attribution/recharacterization cannot apply to any taxable year beginning before October 4, 1994, when the final regulations (discussed _infra_) were adopted. Thus, petitioners contend that they may determine their 1993 and 1994 tax liability under the proposed regulations promulgated in 1992 (section 1.469-4, Proposed Income Tax Regs., 57 Fed. Reg. 20802 (May 15, 1982), PS-1-89, 1992-1 C.B. 1219), thereby avoiding the self-rented property rule and rendering the rental income in question as passive (hereinafter this argument is referred to as petitioners' proposed regulations argument). Respondent acknowledges that under the transitional relief provided in section 1.469-11(b), Income Tax Regs., taxpayers are permitted to determine their tax liability in accordance with the 1992 proposed regulations for taxable years ending after May 10, 1992, and beginning before October 4, 1994. Nevertheless, respondent asserts that under those proposed regulations petitioners' 1993 and 1994 tax liability would be the same as under the final regulations because under the proposed regulations a C corporation's activities would be attributed to its shareholders, resulting in the rental income in question being characterized as nonpassive.

Finally, petitioners assert that, assuming arguendo the rental income from the Everett Mill, Kunhardt Mill, and FLS Realty Trust

properties is properly recharacterized as nonpassive (or active) income under section 1.469-2(f)(6), Income Tax Regs., nonetheless, respondent was without authority to disallow the claimed rehabilitation credit (hereinafter this argument is referred to as petitioners' credit argument). According to petitioners, denial of the rehabilitation credit defeats the express legislative policy goal underlying the enactment of section 47; namely, to preserve historic landmarks and to provide an economic stimulus to areas susceptible to abandonment.

Petitioners maintain a distinction between recharacterizing income, on the one hand, and recharacterizing the underlying activity, on the other. In this regard, petitioners contend that section 1.469-2(f)(6), Income Tax Regs., authorizes respondent only to recharacterize income, not to disallow the section 47 credit. Respondent counters by asserting that once petitioners' net rental income is recharacterized as nonpassive, the limitation on passive activity credits (rather than section 1.469-2(f)(6), Income Tax Regs.) mechanically disallows the rehabilitation credit.

Standard of Review of Section 1.469-2(f)(6), Income Tax Regs.

Petitioners invite us to invalidate a portion of a regulation, section 1.496-2(f)(6), Income Tax Regs. This we do only in the gravest of circumstances. A regulation must be sustained unless unreasonable, plainly inconsistent with the Internal Revenue Code, arbitrary, or capricious. See Commissioner v. South Tex. Lumber

Co., 333 U.S. 496, 501 (1948); Tate & Lyle, Inc. v. Commissioner, 103 T.C. 656 (1994), revd. on other grounds 87 F.3d 99 (3d Cir. 1996); Jablonski v. Commissioner, T.C. Memo. 1998-396. Ultimately, the validity of a regulation is determined by its reasonableness and whether it harmonizes with the plain language of the statute, its origin, and its purpose. See National Muffler Dealers Association, Inc. v. United States, 440 U.S. 472, 477 (1979); Coca Cola Co. & Includible Subs. v. Commissioner, 106 T.C. 1, 19 (1996); Estate of Bullard v. Commissioner, 87 T.C. 261, 269 (1986).

The starting point in determining the deference given to a regulation is whether the regulation is legislative or interpretive in nature. See Mordkin v. Commissioner, T.C. Memo. 1996-187 (citing Dresser Indus., Inc. v. Commissioner, 911 F.2d 1128, 1137-38 (5th Cir. 1990), affg. in part and revg. in part 92 T.C. 1276 (1989)). A legislative regulation is one that is issued under a specific grant of authority to define a term or prescribe a method of executing a statutory provision. See id. An interpretive regulation is one that is promulgated under the general authority of section 7805(a). See id.

Congress authorized the Secretary to promulgate "such regulations as may be necessary or appropriate to carry out provisions of [sec. 469] * * * which specify what constitutes an activity, material participation, or active participation" for purposes of section 469, and "requiring net income or gain from a

limited partnership <u>or other passive activity</u> to be treated as not from a passive activity."  Sec. 469(l)(1), (3) (emphasis added). This Court has already determined that section 1.469-2(f)(6), Income Tax Regs., is a legislative regulation promulgated under section 469(l).  See <u>Schwalbach v. Commissioner</u> 111 T.C. at 220-221. Accordingly, we give that regulation the highest level of judicial deference.  See <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 843-844 (1984); <u>Fransen v. United States</u>, 82 AFTR 2d 6621, 98-2 USTC par. 50776 (E.D. La. 1998);  <u>Schwalbach  v.  Commissioner</u>,  <u>supra</u>;  <u>Jablonski  v. Commissioner</u>, <u>supra</u>.

<u>Analysis of Parties' Arguments</u>

Petitioners maintain in their validity argument that the self-rented property rule cannot apply to reclassify their rental income as nonpassive because KGR's business activities cannot be attributed to Mr. Sidell for purposes of determining "material participation". We disagree.  Mr. Sidell's transaction with KGR is the epitome of a self-renting transaction.  Mr. Sidell is the sole shareholder of KGR and manages its operations in various capacities.[8]  At the same time that Mr. Sidell materially

---

[8]   Petitioners acknowledge that Mr. Sidell materially participated in KGR. However, they argue that there is a distinction between materially participating in KGR and materially participating in the activities of KGR.  Petitioners cite no authority to support this distinction.  Regardless of any
(continued...)

participated in KGR's operations, through his grantor trusts he rented several pieces of real property to KGR. KGR used the leased property in conducting its apparel business. By being in effect both the lessor and lessee of the properties in question, Mr. Sidell established the amounts of rent, and, unless the resulting rental income is deemed nonpassive, he could have used all of his passive losses to offset that income.

Moreover, there is ample legislative history and proper delegation under section 469(l) supporting respondent's attribution of KGR's activities to Mr. Sidell. Specifically, Congress authorized the Secretary to promulgate regulations that specify what constitutes an "activity" and what constitutes material participation. Further, Congress permitted the Secretary to promulgate regulations that permitted recharacterization of "net income or gain from a limited partnership or other passive activity as [being] not from a passive activity." Sec. 469(l)(1), (3). We believe "other passive activity" encompasses activities of a C corporation engaged in a trade or business.

---

[8](...continued)
distinction, Mr. Sidell's day-to-day management of KGR's only line of business would constitute material participation in all the activities of KGR, which consequently would trigger the self-rented property rule. See sec. 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5686, 5700 (Feb. 25, 1988), T.D. 8175, 1988-1 C.B. 191, 234.

In enacting section 469, Congress was specifically concerned with both related party leases and the possibility of abuse by the formation of closely held corporations. See, e.g., sec. 469(e); S. Rept. 99-313, at 714 (1986), 1986-3 C.B. (Vol. 3) 1, 713-714; H. Conf. Rept. 99-841 (Vol. II), at II-147 (1986), 1986-3 C.B. (Vol. 4) 1, 147; 53 Fed. Reg. 5686, 5694 (Feb. 25 1988). On brief, petitioners assert that no potential for abuse exists in this case because they own no tax shelters. They claim that their Lawrence, Massachussetts, properties are the only rental properties they have and that these properties are either contiguous to or located across the street from each other. Moreover, petitioners maintain that ownership of the real properties was separated from the business of KGR for valid business reasons--to insulate the properties from potential liabilities arising from the operation of KGR's business and to insulate KGR from potential liabilities arising from the ownership of the property. In addressing these assertions, respondent states on brief:

> The petitioners' assertion that no abuse potential is present in the present case because they own no "tax shelters" begs the question. Furthermore, the unquestioned legitimate business needs that prompted the purchases of the various properties that caused petitioners to incur losses do not mean that the petitioners' case is not the sort against which the strictures of section 469 should be aimed. * * *

> The self-rental rule as a matter of administrative convenience is a bright line rule. The rule does not look to a taxpayer's motives in structuring transactions.

We are persuaded by respondent's responses to petitioners' assertions.

Consequently, we conclude that the self-rented property rule in section 1.469-2(f)(6), Income Tax Regs., is valid pursuant to the Secretary's delegated regulation-making authority.

We now turn our attention to petitioners' proposed regulation argument. The taxpayers in Connor v. Commissioner, T.C. Memo. 1999-185, advanced a similar argument.[9] We rejected the taxpayers' argument in that case and for the reasons expressed both therein and hereinafter do so in this case.

As in Connor, petitioners herein assert that the proposed regulations promulgated in 1992 did not specifically disavow the provisions in the temporary regulations issued in 1989, which provided that "a taxpayer's activities do not include operations

---

[9] In Connor v. Commissioner, T.C. Memo. 1999-185, the taxpayer husband practiced dentistry and was employed by a professional service corporation in which he was a shareholder. (Until Oct. 31, 1993, the corporation was known as Michael F. Connor, D.D.S., S.C.; after that date, the corporation was known as Drs. Connor & McKeever, S.C.). The professional service corporation leased the building (the Rochester Street building) in which it conducted its business activities from taxpayer wife. The taxpayers reported net income from the rental of the Rochester Street building as $10,503 and $15,937 in 1993 and 1994, respectively. They reported losses from the rental of another property and losses from a partnership, which they used to offset the rental income from the Rochester Street building. The Commissioner determined that the rental profits from the Rochester Street building constituted nonpassive income and consequently could not be used to offset the taxpayers' passive losses. We sustained the Commissioner's determination.

that a taxpayer conducts through one or more entities (other than pass through entities)."[10]  Sec. 1.469-4T(b)(2)(ii)(B), Temporary Income Tax Regs., 54 Fed. Reg. 20543 (May 12, 1989).  Accordingly, petitioners maintain:

> It is abundantly clear that Proposed Regulation sec. 1.469-4 was not intended to, and in fact did not change the rule from the * * * Temporary Regulations that a taxpayer's activities did not include those conducted through a C corporation. Consequently, it is clear that under Proposed Regulation sec. 1.469-4, the self rented property rule does not apply to the rental of property to a C corporation.

Petitioners' proposed regulation argument is founded upon the transitional relief set forth in section 1.469-11(b)(1), Income Tax Regs., which, as applicable herein, permits petitioners to determine their tax liability for 1993 and 1994 using the rules set forth in the proposed regulations promulgated in 1992 (rather than the final regulations).  As previously stated, these proposed

---

[10]   At trial, petitioners introduced over respondent's objection a multitude of Internal Revenue Service internal documents and memoranda purporting to show intent on the part of the drafters of sec. 1.469-4, Proposed Income Tax Regs., 57 Fed. Reg. 20802 (May 15, 1992), to maintain the exclusion on attribution of activities from C corporations.  We find these documents to be of little probative value inasmuch as they do not state the final position of either the Commissioner or the Secretary.  See Connecticut Gen. Life Ins. Co. v. Commissioner, 109 T.C. 100, 110 (1997), affd. 177 F.3d 136 (3d Cir. 1999). Normally, such internal memoranda are not binding on the Secretary and cannot be used to determine intent.  See id. at 109-111 (observing that material from administrative work files generally reflects only personal views of various Government representatives, not official statements of the Commissioner or the Secretary); Armco, Inc. v. Commissioner, 87 T.C. 865, 867-868 (1986).

regulations are silent as to whether the activities of a C corporation are attributable to the corporation's shareholders. Contrary to petitioners' assertion, the silence of the proposed regulations on this subject cannot be equated to providing petitioners with relief from the attribution rules set forth in the final regulations. Simply put, the proposed regulations' silence means nothing, not something. Moreover, the rule of nonattribution set forth in the temporary regulations issued in 1989 is not relevant because <u>the relief afforded petitioners under the transitional rules is based solely on the rules set forth in the proposed regulations of 1992</u>, not in the temporary regulations.

We are mindful that:

(1) The 1992 proposed regulations eliminated the specific statement found in section 1.469-4T(b)(2)(ii)(B), Temporary Income Tax Regs., 54 Fed. Reg. 20527, 20543 (May 12, 1989), T.D. 8253, 1989-1 C.B. 121, 139 (the second set of temporary regulations), which stated:

> For purposes of applying section 469 and the regulations thereunder, a taxpayer's activities do not include operations that the taxpayer conducts through one or more entities (other than passthrough entities).

(2) The preamble to the 1992 proposed regulations states:

> This document proposes to replace section 1.469-4T with a new section 1.469-4, which will provide a modified definition of the term <u>activity</u>.

and

(3)    The preamble to the final regulations, 59 Fed. Reg. 50485, 50486 (Oct. 4, 1994), T.D. 8565, 1994-2 C.B. 81, 83, states:

> The final regulations clarify that in determining whether a taxpayer materially or significantly participates in an activity, a taxpayer may group that activity with activities conducted through C corporations that are subject to section 469 (that is, personal service and closely held C corporations). [Emphasis added.]

It is inferable from the elimination of the aforementioned statement in the temporary regulations of 1989 and the preamble to the proposed regulations of 1992 that the Secretary did not intend in those proposed regulations to adhere to the position previously taken in the temporary regulations.  As we noted in Schwalbach v. Commissioner, supra, there is nothing in the 1992 proposed regulations that would lead us to believe that the Secretary was proposing to retain the rule set forth in the 1989 temporary regulations that the activities of a C corporation are not to be attributable to the corporation's shareholders.  See Schwalbach v. Commissioner, 111 T.C. at 228.

Because the proposed regulations are silent as to whether the activities of a C corporation are or are not attributable to the corporation's shareholders, the 1992 proposed regulations are of no benefit to petitioners in determining their 1993 and 1994 tax liability.

Finally, we turn our attention to petitioners' credit argument.  A passive activity credit is defined as "the amount * *

* by which * * * the sum of the credits from all <u>passive activities</u> allowable for the taxable year under subpart D of part IV of subchapter A * * * exceeds the regular tax liability of the taxpayer for the taxable year allocable to all passive activities." Sec. 469(d)(2) (emphasis added).  The rehabilitation credit is a credit allowable under subpart D of part IV of subchapter A.  See secs. 46, 38(b)(1).

In determining the existence and amount of a passive activity credit, the regular tax liability allocable to all passive activities must be ascertained.  The regular tax liability allocable to passive activities is defined in section 1.469-3T(d), Temporary Income Tax Regs., 53 Fed. Reg. 5724 (Feb. 25, 1988), as follows:

> (d)  Regular tax liability allocable to passive activities--(1)  In general.--For purposes of paragraph (a)(2) of this section, the taxpayer's regular tax liability allocable to all passive activities for the taxable year is the excess (if any) of --
>
> (i)  The taxpayer's regular tax liability for such taxable year; over
>
> (ii) The amount of such regular tax liability determined by reducing the taxpayer's taxable income for such year by the excess (if any) of the taxpayer's passive activity gross income for such year over the taxpayer's passive activity deductions for such year.

Thus, in order to utilize a tax credit allocated to a passive activity, a taxpayer must have passive income in excess of passive deductions. See sec. 1.469-3T(g), <u>Examples</u> (<u>2</u>) and (<u>3</u>), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988). Because petitioners' net rental income has been recharacterized as nonpassive for 1993 and 1994, petitioners have no passive income. Without passive income, petitioners have no "regular tax liability allocable to passive activities." Any rehabilitation credit would be in excess of such regular tax liability. Accordingly, we hold that respondent properly disallowed the rehabilitation credit for the years in issue.

In reaching our conclusions herein, we have considered all other arguments presented and, to the extent not discussed above, find them to be irrelevant or without merit.

To reflect the foregoing and respondent's concession,

<u>Decision with respect to the deficiencies for 1993 and 1994 will be entered for respondent; decision with respect to the accuracy-related penalty under section 6662(a) with respect to 1994 will be entered for petitioners</u>.