T.C. Memo. 2000-254

UNITED STATES TAX COURT

MARVIN L. BARMES AND BARBARA J. BARMES, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11135-98.                    Filed August 11, 2000.

Marvin L. Barmes and Barbara J. Barmes, pro se.

<u>Timothy A. Lohrstorfer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined a deficiency in petitioners' Federal income tax of $13,821 for 1994 and an accuracy-related penalty under section 6662(a) of $2,764.

The issues for decision are:

1.   Whether petitioners may deduct depreciation for two automobiles for 1994.  We hold that they may not.

2.    Whether petitioners may deduct as a casualty loss for 1994 the cost of improving and restoring their pond and its surrounding grounds.  We hold that they may not.

3.    Whether petitioners are liable for the accuracy-related penalty under section 6662(a) for 1994.  We hold that they are.

The parties agree that, to the extent that we sustain respondent's determinations increasing petitioners' income shown on Schedule C, Profit or Loss From Business, a computational adjustment is required for petitioners' self-employment tax for 1994.

Unless otherwise indicated, section references are to the Internal Revenue Code.  References to petitioner are to Marvin L. Barmes.  References to Mrs. Barmes are to petitioner Barbara J. Barmes.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.    Petitioners

Petitioners lived in Fritchton, Indiana (the Fritchton residence), when they filed their petition.  The Fritchton residence is located on 17.73 acres of land (the Fritchton property).  Petitioners acquired the Fritchton residence and property in 1978.

There is an old farmhouse located near petitioners' residence on the Fritchton property.  Mrs. Barmes' mother lived

in the farmhouse until she died in 1992.  Petitioners remodeled the farmhouse and furnished it as an office in 1994.

B.    Barbara's Gift Shop

1.    General Business Activities

In 1994, petitioners operated Barbara's Gift Shop and Barmes Wholesale (Barbara's Gift Shop), the principal place of business of which was at 120 Main Street in Vincennes, Indiana.  Barbara's Gift Shop was a wholesale and retail business.  It is about 6½ miles from the Fritchton residence.

Petitioners each worked 7 days a week at Barbara's Gift Shop in 1994.  Petitioner typically worked 14 hours per day, and Mrs. Barmes typically worked 10 hours per day.

During 1994, about 90 percent of the time petitioner spent working for Barbara's Gift Shop was at 120 Main Street and about 10 percent was at the farmhouse in Fritchton.  Petitioner had some business meetings in the farmhouse, and Mrs. Barmes occasionally did bookwork there.  The farmhouse was not petitioners' primary place of business in 1994.

2.    Petitioners' Use of Automobiles

In 1994, petitioners bought a Cadillac for $39,215 and a Corvette for $30,390.  Petitioner primarily drove the Cadillac, and Mrs. Barmes primarily drove the Corvette.  During 1994, Mrs. Barmes drove the Corvette to and from petitioners' Fritchton residence and 120 Main Street and for personal purposes.  She

also used the Corvette for business errands.  Petitioner drove the Cadillac to and from the Fritchton residence and 120 Main Street.

### 3. Petitioners' Apartment

In 1994, petitioners had an apartment above the shop at 120 Main Street (the apartment).  The apartment has one room (about 22 by 70 feet) with a double bed, kitchen, television, chest of drawers, dresser, and couch.  Petitioners sometimes used the apartment as a kitchen for their employees and as a first aid room.  Petitioners spent about half of their nights at the Fritchton residence in 1994 and about half at the apartment.

## C. Petitioners' Cattle

Petitioners owned cattle (the number of which is not specified in the record) at the Fritchton property.  When petitioner was at the Fritchton property, he fed the cattle. Petitioners' son, Greg Barmes, also sometimes fed the cattle.

## D. Petitioners' Pond

### 1. Condition of the Pond Before 1994

The Fritchton property contained a pond which was built around 1930.  The trees bordering the pond were primarily willows and also included red cedars, sycamores, and cottonwoods.

Petitioners installed a geothermal heat pump in 1984 which used water in the pond to heat and cool petitioners' Fritchton residence and the farmhouse.

Eight to ten red cedar trees bordering the pond were damaged or destroyed by a wet, heavy snowfall that occurred in 1990-91. The weight of the snow broke many of the trees. Trees and tree limbs fell into the pond from 1991 to early 1994. Petitioners did not replace those trees.

In 1992, petitioners caught fish in the pond and ate them. The pond became stagnant and polluted late in 1993 because trees had fallen into the pond and had not been removed, sediment had accumulated in the pond, and the pond was surrounded by brush. By the summer of 1994, the fish in the pond had died, the pond was shallow and smelled bad, and its banks had eroded.

2. Restoration and Improvement of Petitioners' Pond

Petitioners hired Shepard Construction in 1994 to restore the pond. Shepard Construction deepened the pond by removing sediment and trees from the bottom of the pond, rebuilt a road around the levee, removed two peninsulas from the pond, created an island in the pond from sediment from the bottom of the pond and soil from the levee, and removed trees surrounding the pond, including some trees that had not been damaged. Shepard Construction improved the pond beyond its pre-1991 condition and increased its value.

E.    Petitioners' 1994 Tax Return

        1.    Preparation of Petitioners' Return

Before 1994, petitioners sometimes used tax preparers and certified public accountants to prepare their income tax returns. Petitioners' daughter-in-law, Susan Barmes, helped them prepare their 1994 return.  Susan Barmes had worked for petitioners since 1990 and had been married to petitioners' son Greg since 1994. She had previously worked two or three tax seasons preparing tax returns for H&R Block.  In helping to prepare petitioners' 1994 return, Susan Barmes used a tax return preparation computer program, IRS Publication 334, Tax Guide for Small Business for 1994, and IRS Publication 534, Depreciation.

        2.    Petitioners' 1994 Schedule C for Barbara's Gift Shop

Petitioners reported gross receipts of $5,445,178 and a net profit of $859,655 from Barbara's Gift Shop on a Schedule C attached to their 1994 income tax return.

Petitioners deducted the following amounts of depreciation for the two automobiles they placed in service in 1994:

| Date placed in service | Vehicle | Claimed mileage | Claimed depreciation |
|---|---|---|---|
| 8/1/94 | 1994 Cadillac | 3,500 | $2,960 |
| 6/18/94 | 1994 Corvette | 3,200 | 2,960 |

Petitioners claimed they used each vehicle 100 percent for business.  The mileage claimed by petitioners for each vehicle was taken from odometer readings at the end of 1994.  Petitioners did not maintain a log or other contemporaneous written records

of the business use of the two automobiles for 1994.

Petitioners deducted expenses of $27,187 on the 1994 Schedule C they filed for Barbara's Gift Shop for restoring and improving their pond.  These expenses did not relate to Barbara's Gift Shop.

### 3.  Petitioners' Schedule F

Petitioners reported on a Schedule F, Profit or Loss From Farming, attached to their 1994 return that they had gross income from their cattle activity of $1,593, total expenses of $3,043, and a net operating loss of $1,450.

## F.  Notice of Deficiency

Respondent determined that petitioners were not entitled to deduct the depreciation on the Cadillac and the Corvette. Respondent also disallowed petitioners' deduction of expenses relating to the pond.

## OPINION

### A.  Whether Petitioners May Deduct Depreciation for the Cadillac and the Corvette

For petitioners to be entitled to deduct depreciation on their automobiles for 1994, they must prove the amount of business use of each automobile.  See secs. 280F(b)(3), 168(g)(2).  Petitioners must substantiate the business use of their automobiles by adequate records or other evidence corroborating their own statement of the amount, time and place, and business purpose of the automobile use.  See sec. 274(d)(4).

1.  Petitioners' Contentions

Petitioners contend that they used their cars almost exclusively for business purposes, and that their use of the cars to drive between their Fritchton residence and Barbara's Gift Shop was travel between two business offices because their cattle business was located at their Fritchton residence.  See secs. 274(d)(4), 280F(b)(3).

2.  Commuting Expenses

The expenses of traveling between one's home and place of business are generally nondeductible, personal expenses.  See sec. 262; Fausner v. Commissioner, 413 U.S. 838, 839 (1973); Commissioner v. Flowers, 326 U.S. 465, 473 (1946).  A taxpayer whose primary business activity is not located at his or her residence may not deduct expenses of traveling between the residence and the business merely because the taxpayer conducts a secondary business at home.  See Mazzotta v. Commissioner, 57 T.C. 427, 429 (1971), affd. 467 F.2d 943 (2d Cir. 1972); Andrews v. Commissioner, T.C. Memo. 1978-135.

Petitioners conducted their primary business at 120 Main Street.  Even though petitioner fed the cattle when he was at the Fritchton property and he and Mrs. Barmes worked some in the farmhouse office, petitioners' primary reason for traveling from the gift shop to the Fritchton residence was personal.

Petitioners cite Heape v. Commissioner, T.C. Memo. 1992-660,

for the proposition that the cost of travel between a taxpayer's two places of business is business travel. Petitioners' reliance on <u>Heape</u> is misplaced. In <u>Heape</u>, the taxpayer was a coal miner who also operated a farm. We held that, even though the taxpayer did a considerable amount of work on his farm, he could not deduct his expenses of traveling between the coal mine and his home because, as here, the primary purpose for the trips was personal.

Petitioners also rely on <u>Gosling v. Commissioner</u>, T.C. Memo. 1999-148, and <u>Genck v. Commissioner</u>, T.C. Memo. 1998-105. Petitioners' reliance on <u>Gosling</u> and <u>Genck</u> is misplaced. In those cases, we held that the taxpayers could deduct the cost of travel between a business the principal location of which was at their home and a second location for the same business. In contrast, the Fritchton property was not the principal place of business of the gift shop.

We conclude that the primary reason for petitioners' travel between their gift shop and the Fritchton residence was personal. See <u>Commissioner v. Flowers</u>, <u>supra</u>.

3. <u>Substantiation</u>

Petitioners' only evidence of the amount of business use of the Cadillac and the Corvette in 1994 was petitioners' testimony. Petitioner testified that his use of the Cadillac was 95 percent business and 5 percent personal. Petitioners treated the trips

from petitioners' Fritchton residence to Barbara's Gift Shop as business use. Petitioners contend that a trip to the shopping mall or a restaurant is business related if the taxpayer makes a business-related telephone call while on the trip. We disagree. A business telephone call does not change the character of a trip from personal to business. See H. Conf. Rept. 98-861, at 1028 (1984), 1984-3 C.B. (Vol. 2) 1, 282.

Mrs. Barmes used the Corvette for some personal purposes. She did not estimate the amount of her business use of the Corvette in 1994. Petitioners do not have a log, records, or other corroboration of their testimony relating to their business use of their automobiles as required by section 274(d)(4). Petitioners did not establish the percentages of business use of the two automobiles. See Rutz v. Commissioner, 66 T.C. 879, 883-886 (1976); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976); Nicholls, North, Buse Co. v. Commissioner, 56 T.C. 1225, 1235-1236 (1971); Kennelly v. Commissioner, 56 T.C. 936, 942 (1971), affd. 456 F.2d 1335 (2d Cir. 1972). Thus, petitioners may not deduct depreciation of the Cadillac and the Corvette for 1994.

B. Whether Petitioners May Deduct the Costs of Restoring and Improving Their Pond as a Casualty Loss

Petitioners deducted $27,187 on their Schedule C for Barbara's Gift Shop for restoration of their pond. Petitioners now contend that they may deduct as a casualty loss for 1994

their cost of restoring the pond because heavy snows in the winter of 1990-91 that caused the cedar trees to fall into and damage the pond were sudden, unexpected, and unusual.  We disagree.

An individual may deduct losses arising "from fire, storm, shipwreck, or other casualty, or from theft."  Sec. 165(c)(3); Durden v. Commissioner, 3 T.C. 1, 3 (1944).  A casualty does not include the "progressive deterioration of property through a steadily operating cause."  Fay v. Commissioner, 120 F.2d 253, 253 (2d Cir. 1941), affg. per curiam 42 B.T.A. 206 (1940); Durden v. Commissioner, supra.

Petitioners contend that the trees fell into their pond from 1991 to 1994 sufficiently suddenly to constitute a casualty loss.  Petitioners cite Bailey v. Commissioner, T.C. Memo. 1983-685, and Helstoski v. Commissioner, T.C. Memo. 1990-382, to support their claim that the deterioration of their pond was not from gradual erosion but was due to a sudden event.  Bailey and Helstoski are distinguishable from this case.  In Bailey, large portions of the taxpayers' backyard fell away in 6 to 8 weeks, exposing the foundation of their house.  We held that the soil slippage occurred quickly enough to be a casualty within the meaning of section 165(a).  Similarly, in Helstoski, we treated as a casualty loss storm damage to the taxpayers' pond which immediately reduced the value of the taxpayers' property.  In

- 12 -

contrast, in the instant case, the pond did not deteriorate suddenly; it deteriorated over a 2-3 year period.  See Heyn v. Commissioner, 46 T.C. 302, 308 (1966); Durden v. Commissioner, supra at 4-5.

Petitioners contend that they properly deducted their loss in 1994 because that was when they first knew the amount of their loss.  See Bailey v. Commissioner, supra.  Petitioners' reliance on Bailey is misplaced.  In Bailey, the Court held that the taxpayers sustained their casualty loss in 1974 because they could not measure their aggregate loss until that year; the damage to their backyard began in December 1973 and continued until January 1974.  Thus, in Bailey, unlike the instant case, the casualty occurred suddenly, even though it occurred in 2 taxable years.  Petitioners may not deduct as a casualty loss the expenses of restoring their pond in 1994 since the damage to the pond occurred gradually.

C.  Whether Petitioners Are Liable for an Accuracy-Related Penalty for Negligence

1.  Section 6662(a)

Respondent contends that petitioners are liable for the accuracy-related penalty for negligence for 1994.

A penalty is imposed under section 6662 equal to 20 percent of the part of the underpayment which is attributable to negligence or disregard of rules or regulations.  See sec. 6662(a).  A taxpayer is not negligent under section 6662(a) if he

or she reasonably relied in good faith on the advice of a competent, independent expert or tax professional who had all the information.  See United States v. Boyle, 469 U.S. 241, 250 (1985); Schwalbach v. Commissioner, 111 T.C. 215, 230 (1998); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on other issue 501 U.S. 868 (1991).

2.   Reliance on Professional Advice

Petitioners contend that they reasonably relied on the advice of their daughter-in-law, Susan Barmes.  We disagree.

Petitioner and Susan Barmes testified that she spent a substantial amount of time helping petitioner prepare petitioners' 1994 tax return.  However, neither petitioners nor Susan Barmes described any advice that she gave petitioners regarding the depreciation of their automobiles or the deduction of their restoration of landscaping expenses.  Thus, there is no evidence that petitioners relied on Susan Barmes' advice on those issues.

Petitioners contend that they were not negligent because they and Susan Barmes relied on IRS Publication 334, Tax Guide for Small Business, and IRS Publication 534, Depreciation, to prepare petitioners' return.  We disagree.  Petitioners did not follow the instructions contained in IRS Publication 334.  For example, IRS Publication 334, at 77, states:  "If you use your car for both business and personal purposes, you must divide your

expenses between business and personal use." Petitioners did not segregate their business and personal use of their automobiles.

Similarly, IRS Publication 334, at 127, states: "The cost of restoring landscaping to its original condition after a casualty may indicate the decrease in fair market value." Petitioners' reliance on that publication to support their claim that they are entitled to claim a casualty loss relating to the pond is unwarranted because the excerpt relied on assumes that the taxpayer has sustained a casualty loss; it does not indicate how to determine that a casualty loss has occurred. Petitioners do not cite any other language from Publication 334 which supports their position here. Thus, the publication is not authority for petitioners' deduction of the pond restoration expenses.

Petitioners were negligent and disregarded rules and regulations. Petitioners did not indicate what advice they received from Susan Barmes, who helped prepare their 1994 return, and they did not have reasonable cause for deducting pond restoration expenses or depreciation on their automobiles without allocating between their business and personal use. We conclude that petitioners are liable for the accuracy-related penalty for 1994.

To reflect the foregoing,

Decision will be entered

under Rule 155.